THE BOARD OF SUPERVISORS OF THE COUNTY OF MONROE, Respondent, *v.* FREEMAN CLARK, Impleaded, etc., Appellant.

The imposition by the board of supervisors of a county upon the county treasurer, during his term of office, of the duty of raising, keeping and disbursing large sums of money, in addition to the usual and ordinary duties of his office, for instance the raising and disbursing money, during a war, for bounty purposes, does not discharge the sureties upon his bond from all liability.

Conceding no liability is imposed upon them on account of such increased duties, their obligations having reference to the usual and ordinary duties of the treasurer remain unaffected.

*Pybus* v. *Gibb* (6 E. & B. 902), disapproved.

In an action upon a county treasurer's bond, the defendants are properly chargeable with interest upon an amount which it appears it was the duty of that officer to pay, but which he failed to pay over at the expiration of his term of office, to his successor.

(Argued April 18, 1883 ; decided May 8, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made October 28, 1881, modifying, and affirming as modified, a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*Joseph A. Stull* for appellant. The imposition of new duties on the treasurer discharged the sureties thenceforth from all liability on the bond absolutely for all future conduct of the office. ( *Ward* v. *Stahl*, 81 N. Y. 406–408 ; *Ludlow* v. *Simons*, 2 Cai. Cas. 1 ; *Miller* v. *Stewart*, 9 Wheat. 702 ; *McClusky* v. *Cromwell*, 11 N. Y. 598 ; *People* v. *Pennock*, 60 id. 426 ; *U. S.* v. *Boyd*, 15 Peters, 187 ; *U. S.* v. *Kilpatrick*, 9 Wheat. 720 ; *Martin* v. *Stewart*, id. 680 ; Burge on Surety, 214 ; *Whiston* v. *Hall*, 5 B. & C. 269 ; *Bangs* v. *Strong*, 4 Comst. 315 ; *People* v. *Vilas*, 36 N. Y. 460 ; Fell on Guaranty and Suretyship, 191, and note, 517 ; *Franklin B'k* v. *Cooper*, 36 Me. 197 ; *Glass* v. *Stimson*, 2 Sumner, 453 ; *Grocers' B'k* v. *Kingman*, 15 Gray, 473 ; *Manufacturers' B'k* v. *Cole*, 39 Me. 188 ; *Leggett* v. *Humphreys*, 21 How. 66 ; *Welch* v. *Bailey*, 10 Johns. 180 ; *Henderson* v. *Marvin*, 31 Barb. 297 ; *St. Albans B'k* v. *Dillon*, 30 Vt. 22 ; *Bonar* v. *McDonald*, 3 H. L. Cases, 226 ; *Pybus* v. *Gibbs*, 6 E. & B. 902 ; 88 Eng. Com. L. 902, 911, 912, 914, 917 ; *Bartlett* v. *Att'y-Gen.*, Parker, 277 ; *Napier* v. *Bruce*, 8 C. & F. 470 ; De Golyer on Guarantee and Principal and Surety, 268 ; *U. S.* v. *Hillegas*, 3 Wash. C. C. 70 ; *U. S.* v. *Tillotson*, 1 Paine's C. C. 305 ; *Postmaster-Gen.* v. *Reeder*, 4 Wash. C. C. 178 ; *Mahew* v. *Boyd*, 5 Ind. 102 ; *Wells* v. *Grant*, 4 Yerg. 491 ; *Pickering* v. *Day*, 3 Houst. [Del.] 474 ; *Webb* v. *Cuspalk*, 3 Ohio, 522 ; *Crandall* v. *Crawford*, 59 Penn. St. 196 ; *Governor* v. *Ridgeway*, 12 Ill. 14, 17 ; *Compher* v. *People*, id. 290 ; *Comm.* v. *Holmes*, 25 Gratt. 774 ; *U. S.* v. *Kirkpatrick*, 9 Wheat. 720 ; *People* v. *Vilas*, 36 N. Y. 459 ; *Mayor* v. *Ryan*, 35 How. 408 ; *S. C.*, 3 Abb. Rep. Am. Cases, 226 ; *People* v. *Pennock*, 60 N. Y. 421, 427.)

*William F. Cogswell* for respondent. Defendant was not released from liability on account of the increase of duties imposed upon the county treasurer after the execution of the bond in suit, and during the term mentioned therein. (1 R. S. 369, §§ 20, 21, 23, 24, 25 ; *People* v. *Vilas*, 36 N. Y. 459, 469.) Assuming that new duties were imposed upon the

treasurer not appropriate to his office, and not within the .purview of his sureties when they signed the bond, the bond is not avoided thereby, but is still good as to his appropriate duties, and secures his official faithfulness in reference thereto. (*Gaussen* v. *U. S.*, 97 U. S. 584; *Commonwealth* v. *Holmes*, 25 Gratt. 771; *Inhabitants of Attleborough* v. *Hatch*, 97 Mass. 533.)

RUGER, Ch. J. This action was against the surety upon a treasurer's bond to the county of Monroe. The term of Baker, the treasurer, whose faithful performance of the duties of the office the bond was designed to secure, extended from October, 1861, to October, 1864. Many questions which were litigated before the referee and some of those discussed at General Term have been eliminated from the case by the acquiescence of the parties against whom they were determined, and this opinion will be confined altogether to the discussion of the remaining points.

It was claimed on the trial by the defendant that by reason of the imposition upon the treasurer during his term of office by the plaintiffs of the duty of raising, keeping and disbursing large sums of money during the war for bounty purposes, which was in addition to the usual and ordinary duties of his office, that the contract of suretyship was so changed by the obligees, that the surety was discharged not only from liability on account of such increased duties, but from his entire obligation upon the bond. This claim was based upon the well-settled principle that a change in the terms or obligations of a contract by the principal without the consent of the surety operates to discharge him from his liability.

The referee held that the surety was not liable for the acts of the treasurer concerning the moneys received by him by reason of the additional duties imposed upon him, but decided that his obligations upon the bond having reference to the usual and ordinary duties of the treasurer remained unaffected by the increase of the duties enjoined upon him. The plaintiff did not appeal from that part of the. decision which relieved the

surety from responsibility for the treasurer's default in accounting for the enlarged receipts of the office, and can, therefore, raise no question as to its correctness.   The defendant appealed, alleging that he should have been altogether discharged from liability upon his bond.

The General Term having affirmed the referee's views of the liability of the surety, the defendant now comes to this court and asks for such total exemption from liability.   No claim is made, that any change was attempted in the literal terms of the contract between the parties or the general nature of the duties or subject to which it applied, but it is argued that because the always indefinite sum of money which is liable in any year to come into the treasurer's hands has been increased beyond the supposed contemplation of the parties when they entered into it, that, therefore, the party is relieved *ipso facto* from his contract liability as a surety.

We think that the decisions of the courts below were quite as favorable to the defendant upon this question as he could justly have expected upon the evidence.   They held that the statutes authorizing the issue of bounty war bonds by the county of Monroe did not, under the circumstances of this case, impose any additional legal duty upon the treasurer, and that, therefore, the surety was not liable for a defalcation by the treasurer in the funds so raised.   The proof showed that the treasurer acted in conjunction with a committee of the board of supervisors in raising moneys and disposing of a large amount of bonds.   Many of the bonds (the amount not appearing) were issued and delivered directly to recruits in payment of bounties, while others, the amount of which is equally uncertain, were negotiated, and the money realized was paid to recruits by the treasurer and other agents of the county.   It is safe to assume, however, that the moneys passing through the treasurer's hands on account of these transactions were much larger in amount than those which he would usually have manipulated, and the question arises whether the possession and disbursement of these moneys by the treasurer with the knowledge and consent of the supervisors vitiated the ob-

ligation of the surety upon his bond. A well-settled distinction between the obligations assumed by sureties upon the bonds of public officers and by those liable upon private contracts is recognized. In the case of the former, the parties' contract, having reference to the acknowledged power of the legislature to vary and change the power and duties of such officers.

It has been repeatedly held in our courts that unless the territorial jurisdiction of such officer has been enlarged or the general nature or functions of his office changed, a surety upon his bond will not be discharged on account of changes made in the official duties after the execution of the contract. This point was considered in *People* v. *Vilas* (36 N. Y. 459), where it was held that the sureties upon the bond of a public officer were not discharged by the subsequent imposition through an act of the legislature of new duties similar in their nature and character to those which the officer originally performed. In that case a loan commissioner was required by an act passed subsequent to the execution of his bond to take charge of an additional sum of money which had previously been in the custody of another commissioner. This decision goes further than we need go, for here we are to consider the effect merely of such additional duties upon the original obligation of the bond.

We are referred to a large number of authorities upon this question and with few exceptions they support the proposition that a surety is responsible for default in the performance of the duties of his principal as they existed at the time of his assumption of liability. *Gaussen* v. *United States* (97 U. S. 584) is directly in point. There Mr. Justice STRONG, in his opinion, said : " If it be conceded, as it may be, that the addition of duties different in their nature from those which belonged to the office when the official bond was given, will not impose upon the obligor in the bond, as such, additional responsibilities, it is undoubtedly true that such addition of new duties does not render void the bond of the officer as a security for the performance of the duties at first assumed. It will

still remain a security for what it was originally given to secure."

Not only does the case of *People* v. *Vilas (supra)* sustain the same doctrine, but such is the uniform course of decisions in the United States, and the rule is now too well settled to be controverted. (*Commonwealth* v. *Holmes*, 25 Gratt. 771; *Hatch* v. *Inhabitants of Attleborough*, 97 Mass. 533 ; *United States* v. *Kilpatrick*, 9 Wheat. 720 ; *White* v. *Fox*, 9 Shepley [Me.], 341 ; *Colter* v. *Morgan's Adm'rs*, 12 B. Monr. 278.)

The case of *Pybus* v. *Gibb* (6 Ell. & Bl. 902), which supports the contrary rule, has been uniformly repudiated in this country whenever it has been cited as an authority.

The further point is made that the referee included in the amount charged to the defendant the sum of $29,127.11, which had been collected by the treasurer during his previous term, and which he had omitted in his accounts, but which in October, 1863, by agreement between the supervisors and the treasurer was brought forward and charged against him. There are several answers to this claim. A careful reading of the case has failed to disclose to us any evidence to sustain it ; on the contrary, it quite conclusively appears that although this discrepancy was discovered as existing in 1863, and it was agreed between the supervisors and Baker that he should be charged with that amount as of that date, yet it did not enter into the account by which the referee ascertained the amount awarded by his report. In stating his account the referee sustaining the defendant's claim that the plaintiffs were bound by the amount fixed by Baker and the supervisors in October, 1861, as the true amount then on hand, excluded all items of account arising prior to that date, and in arriving at the balance of $77,328.06, which he finds to have been in the treasurer's hands on the 4th day of October, 1864, he assumes the correctness of that balance and then states the specific items of cash received and paid out during the treasurer's term, which make up both the debit and credit sides of the account. This process excludes the possibility of the admission of the item of $29,000, or any part of it into the referee's account, and

no such item appeared therein. It may also be said that no exception was taken upon which to raise the question. The point involves a question of fact upon which the referee has neither passed nor has a finding been requested thereon by the appellant. This court will not examine the evidence to determine such questions for the purpose of discovering grounds upon which to reverse a judgment. (*Fabbri* v. *Kalbfleisch*, 52 N. Y. 28; *Van Slyke* v. *Hyatt*, 46 id. 259.)

The claim of the appellant that the referee erred in allowing interest upon the amount which he found that Baker or his executor failed to deliver to his successor on the expiration of his term of office is untenable. The condition of the bond was that the treasurer shall pay according to law all moneys which shall come into his hands as such county treasurer. The statute provides that at the termination of his office, " all books and papers belonging to his office and all moneys in his hands by virtue of his office shall be delivered to his successor in office upon the oath of the preceding county treasurer, or in case of his death, upon the oath of his executors or administrators." He is also required " to keep a just and true account of the receipts and expenditures of all moneys which shall come to his hands by virtue of his office." (§§ 21 and 24, 1 R. S. 369.) The statutory provisions impose an active duty upon the treasurer, and a failure to perform it constitutes a breach of the conditions of his bond.

The necessary and legitimate damages arising from this breach is the amount of money which the treasurer failed to pay over and the interest thereon from the day when the obligation matured. (*Adams* v. *Fort Plain Bank*, 36 N. Y. 255; *Stay* v. *Graham*, 14 id. 492.)

It was held that a county treasurer is chargeable with interest on all sums in his hands which he omits to account for at the annual meeting of the supervisors. (*Supervisors of Chenango* v. *Birdsell*, 4 Wend. 453.) The case seems to be decisive upon this point. The other questions discussed on the argument are necessarily controlled by the conclusions we have reached as above.

The judgment should be affirmed.
All concur, except DANFORTH, J., not sitting.
Judgment affirmed.