[No. 6422.]

## MUND, ADMINISTRATOR, V. ADOLPH REHAUME, ET AL.

1. BILL OF EXCEPTIONS—*What to Contain*—The successful party, desiring to assign cross-errors upon the exclusion of evidence offered in his behalf, may require that the evidence so excluded be inserted in the bill of exceptions of his adversary—(134).

2. APPEALS—*Cross-Errors*—Where no cross-errors are assigned the appellee will not be permitted to argue errors alleged to have been committed against him—(133).

3. ——*Abstract*—If the appellee desires to be heard as to the admissibility or effect of evidence offered on his part in the court below, it must be presented in the printed abstract—(133, 134).

4. FRATERNAL SOCIETY—*Benefit Certificate*—A fraternal order, the death of a member in which entitles his surviving kin to certain benefits, is, for the purpose of determining who is entitled to the benefit, treated as a mutual insurance company, and the certificate of membership as a policy of life insurance, and, so far as possible, as the last will of the member. The policy measures the rights of the parties. The beneficiaries take thereunder, and not by inheritance—(135).

5. ——*Construction of the Certificate*—Where no beneficiary is named in the certificate the member is deemed to accept as the beneficiary thereunder, those designated in the constitution of the order, and this is to be construed according to the ordinary and common use of the word found therein. Technical definitions are not controlling. Therefore where the constitution of the order provided that if the member left no widow, child, or grandchild, the benefits should be paid "all to one parent if only one be living." *Held,* that the father was the beneficiary, though by the law of the domicile the marriage, of which the deceased was begotten, was absolutely void. The incapacity of

the son to transmit to the father was held not the test—(135, 136).

6. ——*Beneficiaries*—Who are eligible as beneficiaries is determined by the laws of the state where the society is organized—(136).

7. STATUTE—*Territorial Effect*—A statute under which a fraternal order is organized determines who shall be eligible as beneficiaries under its certificate, even where the certificate is issued by the head lodge and delivered by a subordinate lodge as its agent in another state—(136).

8. ——*Legitimizing Statutes*—A statute which legitimates cestuous, and void, without judicial sentence, attends the child ous, and void, without judicial sentence, attends the child where wherever he goes and makes him legitimate through life—(136).

*Appeal from Denver District Court.*—HON. HUBERT L. SHATTUCK, Judge.

Appellees (plaintiffs) had judgment below. Defendant (appellant), brings the case here on appeal.

June 19, 1866, at Fond du Lac, Wisconsin, Usebas Parent married his niece by the half blood, Mary Rehaume, daughter of his half sister. The marriage was regular and in good faith, but null. They ate, slept, lived and kept house together, and in June moved to Minnesota, where October 27, 1866, a son was born to them within the wedlock of the marriage, called Adolph. The Wisconsin statute forbade and nullified the marriage. It provided that no marriage should be contracted between parties nearer of kin than first cousins, computed by the rule of the civil law, whether by the whole or half blood; and that all marriages prohibited on account of consanguinity, solemnized within the state, should be absolutely null and void without a divorce, but that the issue of all such marriages should, nevertheless, be legitimate. In Minnesota and Montana the statutes were the same in substance. The Wyoming statute provides: Upon the dissolution by decree of any marriage prohibited on account of consanguinity between the parties, the issue of the mar-

riage shall be illegitimate.   The son, Adolph, settled in Douglas, Wyoming, where he assumed the name of Edward A. Martin.

The Head Camp, Pacific Jurisdiction, Woodmen of the World, is a fraternal life insurance company, on the lodge plan, with a secret ritual, doing business in the western states, incorporated under the laws of tne state of Colorado, with principal office, place of business, and Head Camp, at the City and County of Denver; and one of its objects being to insure the lives of its members.   Adolph Parent, under the assumed name of Edward A. Martin, October 24, 1901, at Douglas, Wyoming, joined Fetterman Camp No. 244 of the order, and received certificate No. 112380, for $2,000.00; the loss being payable to the beneficiaries designated in the constitution of the order.   Section 119 of the constitution of the order, in such cases, provides death benefits shall be payable as follows:

"If the deceased leaves a widow and no children or grand children, to his widow; if a widow and descendants, one-half to his widow and the remaining one-half divided equally among his children, the children of a deceased child to take collectively what their parent would have received, if living; if no widow or descendants, to his parents in equal part or all to one parent if only one be living; if no widow, descendants or parents, then to his brothers, sisters and descendants of deceased brothers and sisters, the latter to take collectively what their parents would have taken if living; if none of said relatives are living, then to the grand parents, uncles and aunts in equal portion; if none of said relatives survive, the benefits in such case shall be forfeited and remain in the benefit fund."

Martin died in good standing in the order, at Billings, Montana, March 25, 1905, where he had lived three years immediately preceding.   His father furnished satisfactory death proof to the company, and

claimed to be the sole beneficiary under the certificate, the mother having died in 1882. Appellees, uncles and aunts of the insured, also claimed the money as sole beneficiaries, and brought suit against the company in the district court of the City and County of Denver. The company filed a bill of interpleader, paid the money into court and asked to be discharged; whereupon, by agreement, Usebas was substituted as defendant. In this court, he having died, his administrator, Mund, was substituted. It is not admitted that any parties to this action are beneficiaries; still it is admitted there are no other beneficiaries living except the parties to the action, and that the money on deposit with the clerk may be awarded to either the plaintiffs or defendant, as the facts admitted or established by the evidence, may warrant. The question is, who are the beneficiaries under the constitution of the order? The district court found that Usebas Parent was not the parent of the insured, and for that reason was not, and could not be the beneficiary, though he was the father; that the appellees, uncles and aunts of the insured upon his mother's side, were the beneficiaries, and entered judgment accordingly.

Messrs. VAN CISE, GRANT & VAN CISE for appellant.

Mr. ROY C. HECOX and Messrs. ELLIOTT & BARDWELL for appellees.

Mr. JUSTICE GARRIGUES delivered the opinion of the court.

1. We will first consider a matter of practice. Plaintiffs offered in evidence voluminous depositions, which were excluded. They also offered parts of the stipulation and sections 4864 and 4858 of the statutes of Wyoming, which were excluded. The findings and judgment of the court were based on the evidence ad-

mitted.   The bill of exceptions tendered by the defendant contained all the admitted, but none of the excluded evidence offered by plaintiffs.   Upon plaintiffs' objection, on this account, the judge stated it was the practice to put every word into the bill of exceptions taken down by the stenographer in his notes.   So the defendant to get the bill signed, was obliged, though under protest, to put in it the offered, but excluded evidence of plaintiffs, and the clerk has incorporated bodily the excluded depositions into the transcript of the record. Counsel for appellees have argued this excluded evidence, and appellant has filed a motion to strike this portion of the argument.

The decree prepared by plaintiffs' counsel and signed by the court without their objection or exception, finds:

"5.   That this cause is to be and is determined entirely upon the allegations contained in the first cause of action in the complaint herein, and without any reference to the said second cause of action, for the reason that the said benefit certificate is not ambiguous in its terms, and that therefore the testimony contained in the depositions herein is not competent to vary or explain the meaning of the terms used in the said benefit certificate."

The evidence offered by plaintiffs, and excluded, was in support of this second cause of action.   The Judge's certificate recites that the bill of exceptions contains not only all the evidence admitted, but also all the evidence offered and excluded.   Appellant's abstract does not contain any of appellees' excluded evidence.   Appellees have filed no supplemental or additional abstract, and have filed no cross errors nor any assignment of error.   Appellant complains of being required to insert appellees' excluded evidence in the bill of exceptions.

Plaintiffs were successful; won all they asked,

and, if satisfied, there was no occasion for including in the bill of exceptions their excluded evidence. But our code provides appellees could assign cross errors on the record filed by appellant. Appellees might be dissatisfied with the rulings of the trial court, though the judgment was in their favor. The case might be reversed and remanded for a new trial. Anticipating this, appellees might desire the opinion of this court upon the ruling of the lower court in excluding the offered evidence. If the judgment is affirmed, cross errors, in such a case, become mere moot questions of law. But if the case is reversed and remanded for a new trial, the opinion of the appellate court upon the assignment of cross errors would be a guide to the lower court on a retrial of the case. When the defendant tendered his bill of exceptions without this excluded evidence, it was proper for plaintiffs to ask to have it inserted if they desired to assign cross errors thereon. Plaintiffs (appellees could not appeal from the judgment in their favor, and inasmuch as the code allows them to assign cross errors on the record filed by appellant, it would be unfair to allow appellant to so prepare the record that appellees could not, though they expressed a desire to the lower court to do so, file cross errors thereon. Appellees have assigned no cross errors, filed no supplemental or additional abstract, and cannot be heard on this excluded evidence. —*Rio Grande South. R. R. Co. v. Colo. Fuel & Iron Co.,* 41 Colo. 4; *Seyfried v. Knoblauch,* 44 Colo. 86; *Golden Age No. 2 M. & M. Co. v. Langridge,* 39 Colo. 158.

It was improper for appellees' counsel to mention it, or base an argument upon it, and the motion to strike will be sustained.

2. The Head Camp, Pacific Jurisdiction Woodmen of the World, for the purposes of this case, must be treated as a mutual life insurance company; and the benefit certificate as a life insurance policy, which the

courts, in construing, treat, as far as possible, as a will
or testament.  The policy is the contract upon which
the suit is based, and measures the rights of the par-
ties.  The beneficiaries take under contract and not
by inheritance.—*Chartrand v. Brace,* 16 Colo. 19.

No specific beneficiary is named in the policy. The
insured accepted the beneficiaries designated in the
constitution of the order.  No one outside of the class
designated is eligible as a beneficiary.  The mother
was dead when the policy was taken out, and the ques-
tion is, who are the beneficiaries?  If the father and
mother within the meaning of the contract are the
parents of the insured, the money is all payable to the
father as the only surviving parent.  The insured was
born within the wedlock of a marriage, and was legiti-
mate by statute, though the marriage was void without
a divorce.  We are not dealing with an illegitimate, but
with a legitimatized child born within the wedlock of a
marriage contracted in good faith, but void without a
decree of court.  The lower court went upon the the-
ory that if the son could not transmit to the father un-
der the technical laws of inheritance, then the father
was not his parent and could not be a beneficiary. This
is not the proper test. . The proper construction of the
contract, and not the law of inheritance, fixes the
rights of the parties.  The word " parents," if we ac-
cept the ordinary and common use of words, should
be construed to mean the father and mother of the in-
sured, under the circumstances of this case.  The tech-
nical definitions of the words father, mother, child and
parent, found in law dictionaries, are not controlling in
this contract.  Technically, water is a mineral, but no
court would think of giving it that construction in a
mining contract.  The laws of the order should be lib-
erally construed according to the ordinary and common
use of words.  Our statutes provide that all words, un-
less the intention was to use them in their technical
sense, shall be understood and construed according to

the approved and common usage of the language. Parent is a common word, and the court in construing this contract, should give it its common meaning. The dictionaries Webster, Worcester, The Standard and The Century, define it to be: "He that begets;" " She that bears young;" "A father or a mother." Applying the common meaning of the word to the facts in this case, it should be construed to mean the father and mother of the insured.

3. The eligibility of beneficiaries in orders of this kind, is determined by reference to the laws of the state where the association is organized. The local Camp at Douglas, Wyoming, was the agent of the Head Camp at Denver.—*Johanson v. A. O. U. W.,* 31 Utah 45, 86 Pac. 494; *Grimme v. Grimme,* 101 Ill. App. 389. The legitimation statutes made the insured a legitimate child, which status remained with him through life, wherever he went.—*Watts v. Owens,* 62 Wis. 517; *Dyer v. Brannock,* 66 Mo. 391; *Simsbury v. East Granby,* 69 Conn. 302; *McGunnigle v. McKee,* 77 Pa. St. 81; *Hartwell v. Jackson,* 7 Tex. 575; *Ives v. McNicoll,* 59 O. St. 402; *Binns v. Dazey,* 147 Ind. 536; 5 Cyc. 636, 642; *Henry v. McNealey,* 24 Colo. 456; *Fowler v. Fowler,* 131 N. C. 169.

The insuring company, by filing an inter-plea, waived any objection it had to the right of either party being designated as beneficiaries. As heirs of the insured, appellees can raise no objection to appellant's eligibility as a beneficiary. Appellees do not claim the fund as heirs, but as the beneficiaries, themselves. They admit the laws of inheritance are not applicable, but, by analogy, argue the father, not being the parent, does not belong to an eligible class of beneficiaries. If the mother was not a parent, her collateral kindred are not eligible as beneficiaries. Their standing of eligibility depends upon the parentage of the mother. This of necessity drives them to the position that the

mother was a parent.    How the mother could be a parent of a child begotten by a putative father who is not its parent, is beyond our ·conception.    The appellees are the brothers and sisters of the mother of the insured, and their standing as beneficiaries is based upon the claim that they are his uncles and aunts, which claim is necessarily founded upon the parentage of the mother, and of necessity includes the parentage of the father.

It was agreed the court should award the fund to either plaintiffs or defendant, as the facts established by the evidence might warrant.    Under the evidence, the court should have awarded it to the defendant.    The case is therefore reversed and remanded with directions to the lower court to enter a judgment awarding the fund to the defendant.                        *Reversed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE MUSSER concur.