[No. 7600.]

AMERICAN BONDING CO. v. THE PEOPLE.

1. CONSTITUTIONAL LAW—*Auditor of State—What Duties May Be Imposed Upon Him by Statute*—Under section 1, of article IV of the constitution the legislature may require the auditor to perform other duties than the examination, verification and adjustment of the accounts of those entrusted with public monies. The statute requiring the auditor to receive the annual license tax imposed by law upon corporations (Laws 1902, c. 3, sec. 64) was a valid exercise of legislative power.

2. ——*Title of Statutes*—An act entitled "An act in relation to the public revenue" required, among other provisions relating to the

public revenue, that corporations doing business within the state should pay an annual license tax. A provision that the auditor of state should receive the tax and pay it into the public treasury was held within the title.

3. ——Taxation—Tax Collected Under an Unconstitutional Enactment, is not to be retained by the officer making the collection. The statute requiring him to pay it into the public treasury, he and the, surety in his official bond are liable if he defaults in the payment. That the tax was paid to him under protest is immaterial.

4. —— ——Liability of Officer to Taxpayer—An officer not authorized to enforce payment but merely to receive a tax imposed by an unconstitutional statute, who, receiving the tax, paid under protest, pays it as required by law to the officer of the law authorized by law to receive it, is no longer liable to the taxpayer; and he is not permitted to retain the money for his individual protection against an anticipated action of the taxpayer.

5. CONTRACTS—By Officer in Violation of Official Duty—The corporations doing business within the state were required by statute to pay an annual license tax to the auditor. In case of failure to pay the tax within the time prescribed a penalty was imposed. The auditor was not empowered to enforce payment, but merely to receive the tax, and within a limited time pay it into the treasury. Certain corporations claiming that the statute was unconstitutional agreed with the auditor that he should receive the tax, not in his official capacity, but as an individual, and retain it until the validity of the statute should be determined. The tax was paid to him under protest pursuant to this agreement for the purpose of relieving the corporations, in case the statute should be upheld, from the penalties to which they would otherwise be liable. The agreement was absolutely void as opposed to public policy.

6. PRACTICE IN SUPREME COURT—Assigning Cross Errors—Under sec. 420, revised code, cross errors assigned by the appellee or defendant in error are heard and determined with those assigned by the appellant or plaintiff in error. The purpose of the statute is to avoid multiplicity of actions, simplify litigation, and avoid delay and expense. If the party successful below failed to obtain all that he was entitled to he may thus have relief against the error which intervened to his prejudice.

7. ATTORNEY GENERAL—Advice to Do What Is Unlawful, is no protection to an officer of state acting upon it.

8. INTEREST—Upon Taxes Collected and Unlawfully Detained—The auditor of state detaining taxes which he is required by statute to pay into the treasury is liable under Rev. Stat. sec. 3162 for interest on each installment of the tax, from the date when the payment should have been made.

*Appeal from Denver District Court.*—Hon. HARRY C. RIDDLE, Judge.

Messrs. McKNIGHT & HENRY and Mr. MARVIN H. HARRINGTON, for appellant.

Hon. BENJAMIN GRIFFITH, attorney general, and Mr. ARCHIBALD A. LEE, deputy attorney general, for appellee.

Mr. JUSTICE MUSSER delivered the opinion of the court:

This action was commenced by the attorney general on behalf of the State against John A. Holmberg, a former state auditor, and The American Bonding Company, the surety on his official bond, to recover a judgment for certain moneys paid to the auditor by various corporations as annual license tax, under the provisions of sections 64 and 65 of the Revenue Act of 1902. (Sess. Laws, 1902, p. 73.) The state recovered a judgment from which the bonding company appealed. That the money was paid to the auditor and never turned over the state treasury by him is conceded. The auditor, instead of paying the money into the state treasury, deposited it, or some of it, in a bank that failed in business and it was lost, at least in part. At the onset, and throughout the consideration of this case, it must be borne in mind that this is a contest between the state and its official and his surety, the official who received the money, and to whom it was paid because he was the officer designated in the statute as the one to whom it should be paid, and who should receive it.

Section 68 of the act made it the duty of the auditor of state, within thirty days after the receipt of any moneys on account of this tax, whether paid under protest or not, to pay the same into the general treasury of the state, and at the time of such payment take a receipt or receipts therefor from the state treasurer, showing upon its face the exact amount of such money paid to said treasurer, and on what account, and from what source the same was derived. The bond given by appellant provided that if Mr. Holmberg would faithfully dis-

charge the duties of his office the obligation would be void, otherwise it would remain in full force and effect. The bond was given in January, 1903, when the statute authorizing the receipt of the money by the auditor was in effect.

The reasons urged by appellant why the judgment should be reversed will be discussed in the order they are outlined in its brief.

1. It asserts that the collection of the money from the corporations was no part of the official duties of the auditor of state and was not done by virtue of his office. The contention is that our constitution names the auditor as an officer in the executive department of the state, without in detail defining his duties; that by the use of the word "auditor" it limited his duties to such as are generally performed by such an officer, and that inasmuch as it is generally understood that an auditor is a person whose function is to settle and adjust accounts or to examine and verify the accounts of persons entrusted with the receipt and disbursement of public moneys, the general assembly had no power to impose upon the auditor the duty of collecting this tax as such a duty did not belong to the general duties of an auditor. This contention is fully answered by our constitution. Section 1 of article IV says:

"The executive department shall consist of * * *, auditor of state, * * * and * * *, each of whom shall hold his office for the term of two years, beginning on the second Tuesday of January next after his election; * * *. They shall perform such duties as are prescribed by this constitution or by law."

Section 15 of article X of the constitution makes the auditor a member of the state board of equalization and prescribes certain duties of that board. It is only in this way that the constitution can be said to prescribe any particular duty of the auditor. Sections 6203 and 6204, Rev. Stat., prescribe duties to be performed by the auditor. Section 6204, after prescribing duties in eight numbered paragraphs, says, in the ninth, that he "shall perform all such other duties as may be

required by law." The constitution and the statute each declare that he shall perform such duties as may be prescribed by law. There is no limitation in this language. Of course if the constitution elsewhere, either expressly or by necessary implication, limits the power of the general assembly to prescribe duties to the auditor, that limitation must be observed, but no such limitation is to be found on the power of the general assembly to prescribe to the auditor the duties that are prescribed in the statute in question. The use of the word "auditor" in the constitution cannot be said to limit the power of the general assembly to prescribing such duties as usually belong to an official or person so designated. Such implication does not follow as a necessary incident or logical consequence, when the constitution says that he "shall perform such duties as are prescribed by this constitution or by law." The presence of such a clause repels any implication that the duties to be prescribed shall only be such as are usually regarded as belonging to an office so designated. Such a meaning can only be obtained by reading something into the constitution that is not there and that is even repugnant to what is there. In Indiana, under a constitution that created the office of state auditor, but attached no duties to it, except to say that he "shall perform such duties as may be enjoined by law," it was held that the auditor had not, by virtue of the constitution, a claim of right to the discharge of any given service.— *Branham v. Lange,* 16 Ind. 497. To hold otherwise would be to embarrass, not only the general assembly but the state and its officials in the performance of their duties. If the contention of the plaintiff in error would prevail then every time the legislature imposed a duty upon the auditor that official would be attacked upon the ground that the duty did not pertain to such an office, unless the party affected thought otherwise, and the question would have to be litigated to ascertain whether the duty appertained to the office or not. Who can draw a line of demarcation between the duties that usually appertain to the office of a person designated as an auditor and

those that do not?   Before the adoption of our constitution, duties, other than the auditing of accounts and as numerous as the number of states existing with constitutions similar to our own, were imposed upon the auditors of state.   In Michigan, all the reports of the amount of capital stock of incorporated bodies paying specific taxes were to be placed on file in the auditor general's office.   The auditor general was to estimate and charge the specific tax, and in case any company should refuse to pay he was to issue his warrant to the sheriff of the county, commanding him to levy the same, sell the property and collect the tax.   Com. Laws of Mich., 1857, p. 337.   In Illinois, it was the duty of the auditor to institute all suits and motions in favor of the state.   Rev. Laws, Ill., 1833, p. 36, and 1845, p. 80.   In Indiana, it was his duty, by statute, to foreclose mortgages and collect funds secured thereby and belonging to the state.—*Bansomer v. Mace,* 18 Ind. 27.   Under the banking laws of Massachusetts, in the General Laws of 1860, it was the auditor's duty to cause bank notes to be engraved, and to countersign, number and register them and perform many other duties with respect to banks.

It seems that the appellant relies mostly for authority in support of its contention on *Love v. Baehr,* 47 Calif. 364. That case, when rightly interpreted in the light of the then California constitution, is applicable here, if at all, against appellant's contention.   It related to the salary of the attorney general.   The court said that the constitution provided for the election of certain officers, but was wholly silent as to their duties, leaving these to be prescribed by the legislature.   Reference to the constitution reveals that it provided for the election of a controller, treasurer, attorney general and surveyor general, and was wholly silent as to their duties.   It was under such circumstances that the court said that the power to prescribe duties devolved upon the legislature, but the power was limited by the nature of the office.   Were the same meaning given to our constitution the express clause which says that the duties of the several officers shall be as prescribed by law,

would be rendered useless. It is a well known rule that every clause of a constitution should be given a use and a meaning. A constitution which creates certain offices and is entirely silent as to their duties means something of course, and the California court gave a meaning to such a constitution, but a constitution which creates certain offices and expressly provides that their duties shall be as prescribed by law, must mean something different, else the provision would be useless. It is concluded, therefore, that the legislature had the power to impose upon the auditor of state the duties in question.

2.   It is next contended that the moneys were collected under an unconstitutional statute and therefore the auditor had no right to collect the tax from the corporations, nor was it the duty of the auditor to turn the funds over to the state. If we understand the brief of appellant, it has attempted to present this matter under two aspects. First, that the duties imposed upon the auditor were not within the title to the act, and second, that the tax itself, or its imposition, was unconstitutional. The title of the act was, "An act in relation to public revenue and repealing all previous acts or parts of acts in conflict therewith." The annual license tax on corporations was levied for the purpose of revenue and it certainly was public revenue. In order to have the act executed at all, it was necessary to designate therein the officer or officers who should carry out its provisions, else it would never have been executed, and, in mentioning the several officers who were charged with executing the various provisions of the act, it was certainly necessary, in order to have it executed, to say what they should do. The act treated of one general subject, namely, the raising of revenue for the support of government, clearly expressed in the title. It was a general revenue law, relating to many and various forms of taxes and the collection thereof. The receipt of this license tax by the auditor and his payment thereof over to the treasurer was a means necessary or convenient for the accomplishment of the one general object of the statute, and was therefore within the

purview of the title.—*Golden Canal Co. v. Bright,* 8 Colo. 144; *People v. Scott,* 52 Colo. 59, 120 Pac. 126.

Many cases are cited in the brief for the purpose of showing that the annual license tax was unconstitutional. It is not necessary to inquire about that. No case is cited, however, that holds that an officer who collects an unconstitutional tax by virtue of a statute and who is commanded by that statute to pay it into the treasury, whether paid under protest or not, has the right to keep it as against the state.

Before discussing the law in this regard it is best to state certain facts pleaded by appellant in its answer, which, by reason of a demurrer, sustained, stand admitted on this record. The appellant alleged that the auditor attempted to collect the annual license tax from these various corporations; that the companies asserted that the law was unconstitutional, and that suits would be brought to test its validity; that it was agreed between the companies and the auditor and other executive officers of the state that the companies should pay the tax to Mr. Holmberg, personally, and not as auditor, under protest, and that he should hold the same personally and not as an official, nor for the state, until such time as the validity of the statute should be determined; that the companies paid the tax pursuant to this agreement, under protest, coercion, and duress, and only for the purpose of avoiding the penalties provided in section 66 of the act; that a suit was started, entitled *"People etc. v. American Smelting and Refining Company,* in which proceedings were had that resulted in a decision of the supreme court of the United States, determining that section 65 of the act, which related to the tax on foreign corporations, was in violation of the constitution of the United States; that, thereafter, upon the advice of the attorney general of the state, the said Holmberg paid back to some of the foreign corporations the moneys which he had collected from them, and that he held the balance collected from foreign corporations in trust for their use and benefit; that he had collected a large part of the moneys from domestic corporations,

doing an interstate business, and that the act was unconstitutional as to them.

In its opening brief, the appellant makes some claim, based upon the alleged agreement with the auditor that the money was paid to and held by him as an individual and not as an officer. It was alleged that the auditor attempted to collect the tax, and that it was paid to him under the alleged agreement for the express purpose of avoiding the penalties of the act. It is inconceivable that the payment of the money could avert the penalties of the act without being paid to the state or to the official for the state. Certainly the corporations or the appellant cannot be permitted to say in one breath that the money was paid to a private individual, who was the auditor, for their use and benefit, and in the next breath say that it was paid to that individual for the purpose of averting the penalties for its non-payment, nor can they, at the same time and by the same payment, be permitted to enjoy whatever benefits either of such incongruous positions may bring to them. If the penalties were averted by the payment then it was paid to the state, and neither the appellant nor the corporations concerned can, with reason, say otherwise. It also stands to reason that no agreement, wherein a public official agrees not to perform the sworn duties of his office, can affect or bind the state. His bounden duty is to faithfully discharge the duties of his office and no authorities are necessary to show that any agreement with private individuals not to perform his bounden duty as an officer, is against public policy and absolutely void as between the state and its officer, and this case will be discussed and considered as though no such agreement was in it.

It was not alleged by appellant that any of the corporations to whom the auditor had not repaid the tax were prosecuting any action against him for its repayment. The statute did not afford the auditor any means by which he could enforce the payment of the tax nor require him to enforce it. It said that the corporations should pay it to him, and if they did

not they should suffer certain penalties.   It provided that the
auditor should notify the corporations liable to the tax of the
time it should be paid, and that after that time he should no-
tify those who had not paid it that they had suffered the pen-
alties, and then provided that if the tax and a certain percent-
age in addition were paid the penalties would be removed.
The auditor was to receive the money as the corporations saw
fit to pay it and he was to turn it over to the treasurer within
thirty days after receiving it, whether it was paid under pro-
test or not.   Mr. Holmberg received the money sued for be-
tween January, 1903, and January, 1905, and this action was
commenced in March, 1909.   Under these facts and circum-
stances the constitutionality of the tax need not be consid-
ered.   Having received the tax, it was the duty of the auditor
to pay over the money as the statute directed and to let the
corporations pursue such remedies to get it back as were pro-
vided.   The general rule as to the liability of an officer, when
he has received money for a tax which he is charged to col-
lect or receive, is stated thus, in 2 Cooley on Taxation (3d
Ed.), p. 1325.

"The substantial fact is that he has received money for
the state, and having done so, it is not his privilege to pause
and question the right of the state to receive it; but he should
pay it over, and leave those from whom it was received to
present a claim to the state for the refunding, if they deny
its right to retain it.   Even an unconstitutional tax, once col-
lected, the officer has no right to retain, but he should account
as in other cases."

And in the footnote on the same page, the cases of
*Waters v. State*, 1 Gill. 302, and *Smythe v. Titcomb*, 31 Me.
272, are cited to the point that it is not a good defense to a
suit to recover taxes collected, that the tax itself was unconsti-
tutional.   Also the case of *O'Neal v. School Commissioners*,
27 Md. 227, where there was a like ruling as to a tax claimed
to have been unlawfully levied.   Also *State v. B. & O. R. Co.*,
34 Md. 344, where it was held that a railroad, which was re-

quired to pay to the state one-fifth of the fares on a certain branch, was required to pay over one-fifth of the fares collected, notwithstanding it alleged the unconstitutionality of the tax. In *Village of Olean v. King,* 116 N. Y. 355, an action against an officer and the sureties on his official bond, it was said:

"While a tax collector may decline to proceed in the collection of a tax illegally levied, as any person may refuse to recognize any illegal authority, or to obey an unconstitutional law, he may do so only for his own protection. Having collected a tax, he cannot then question the right of the proper authority to receive it, but must pay it over."

Many other cases can be cited to the same effect, among which are the following: *Morris v. State,* 47 Tex. 583; *Swan v. State,* 47 Tex. 120; *Lovingston v. Trustees,* 99 Ill. 564; Burroughs on Taxation, p. 264.

This doctrine, of course, is extended to the liability of a surety on the official bond of the officer.—*Clifton v. Wynne,* 80 N. C. 145; Brandt on Suretyship and Guaranty (2d Ed.), sec. 523.

It cannot be urged with reason that an officer should be permitted to retain, for his own protection, the money received by him for taxes, when the taxpayer fails to bring an action for its recovery. A case involving the retention of money by an officer after the commencement of an action against him is not before us. Had the auditor simply obeyed the statute by receiving the money, without any attempt to aid the companies, by agreement or otherwise, and paid it into the treasury within the thirty days provided for that purpose, when no action was commenced against him, he would have performed his duty and would have been freed from any liability to refund. If he was at all liable to any corporation, which we do not determine, it was incumbent upon that corporation to promptly begin an action before he obeyed the statute and paid the money over to the treasurer. It would be unjust to hold him liable after had obeyed the statute. The

corporations had full knowledge of his duty in that behalf. He was merely a receiving agent of the state, a conduit as it were, through which the money passed from the corporations into the state treasury.

In *San Francisco v. Ford*, 52 Cal. 198, it was held that it was the duty of the tax collector under the code, on the first Monday in each month, to pay to the county treasurer all money collected by him as taxes for the state and county, even if the tax was illegal and the money was paid to the collector under protest. And in *Phelan v. San Francisco*, 120 Cal. 1, it was said:

"Having paid the money into the treasury in obedience to this official duty, it would violate all principles of justice to hold him individually liable to the plaintiff therefor, upon the ground that he had refused to follow the plaintiff's directions to disregard his official obligation."

See also *Craig v. Boone*, 146 Cal. 718. And in *Hardesty Bros. v. Fleming*, 57 Tex. 395, it was held that if a taxpayer pays an illegal tax under protest and delays the commencement of an action until after such time as the officer is required to pay over the money, that the action would not be maintainable against the collecting officer. And in *Dickens v. Jones*, 6 Yerg. 483, it is said in the syllabus:

"Money paid to the sheriff for assessed taxes, which could not be assessed under our constitution, cannot be recovered, especially after the sheriff has paid the money to the treasury."

It is plain from these authorities, which we think are based upon sound reason and justice, that had the auditor obeyed the statute and paid this money into the treasury he would have had all the protection that he needed and that can be thrown around an officer when no action has been brought.

3. The appellant next contends that the statute of 1907, (Sess. Laws, 1907, pp. 548, 551), repealed the sections of the 1902 statute, under which the money was paid to Mr. Holmberg, and that, therefore, the right of the state to recover

money from him was taken away. There is a saving clause in the 1907 statute that appellant says does not refer to the right of the state to recover money from an officer who collected it under the previous statute. The contention amounts to this, that if a tax collector, who receives tax money for the state, fails to account for it, and the statute, by virtue of which it was collected, is repealed, without expressly saving to the state the right to recover from the collector, that right is lost. The statement of such a contention carries with it its own refutation. The principle of law advanced by the appellant to support it is wholly inapplicable to this case.

This disposes of the argument of appellant for a reversal of the judgment, and in so far as the errors assigned by it are concerned the judgment must be affirmed. The attorney general, however, has assigned two cross-errors that must be considered. It appears that after the decision in *Am. Smelting & Refining Co. v. People,* 204 U. S. 103, Mr. Holmberg on the advice of the then attorney general, repaid to various foreign corporations the annual tax paid by them to the amount of $882.16. The attorney general in charge of this case asked that the judgment include this amount, and also interest on the whole amount, which the auditor failed to pay into the state treasury, but the court refused the requests, to each of which refusals and to the judgment the attorney general excepted.

Section 420, Rev. Code, provides that an appellee or defendant in error may assign cross-errors on the record filed by an appellant or plaintiff in error, which shall be heard and the decision rendered thereon at the same time that the cause is considered on the other errors assigned. The plaintiff did not obtain all it asked. If the court was in error in excluding the money returned and the interest, or either of them, from its judgment the plaintiff ought to have obtained a larger judgment than it did. Therefore, the cross-errors assigned are not moot questions of law as in the case of *Mund v. Rehaume,* 51 Colo. 129.

The language of the code is that the decision on the cross-errors shall be rendered "at the same time that the cause is considered on the other errors." If the decision on the cross-errors is that the appellee or defendant in error is entitled to affirmative relief, that relief should be granted else the cross-errors serve no effective purpose. Each party may be dissatisfied with the judgment, and it was the evident purpose of this provision of the code to afford a means of determining all errors against either party in one review. This subserves a leading object of the code, namely, to avoid multiplicity of suits, and render litigation simple, cheap, and speedy.

The conclusion to be drawn from *Brennan v. The Bank,* 10 Colo. App. 368, seems to be that Brennan, the plaintiff in error, might have obtained the relief he sought by an assignment of cross-errors in a former proceeding reported in 7 Colo. App. 427, wherein the bank sued out the writ of error. In *Patoka Township v. Hopkins,* 131 Ind. 142 at 146, it is said:

"It is a mistake to suppose that an appellee who properly saves a question and duly presents it by the assignment of cross-errors is not entitled to affirmative relief. An appellee may do more than save costs or prevent a reversal by appropriately assigning cross-errors. He may in many instances accomplish as much by the assignment of cross-errors in a case appealed by his adversary as by himself prosecuting an appeal."

The court affirmed the judgment upon the appellant's assignment of errors and reversed it upon the appellee's assignment of cross-errors, and remanded the cause with instructions to modify the decree.

As has been seen, it was the duty of the auditor to pay the money into the state treasury, and it is sought to excuse in part this violation of duty by showing that some of the money was paid to some other persons who claimed they were entitled to it. True, the auditor paid it to the corporations

upon the advice of the former attorney general, but these two were administrative officers, and they took unto themselves the judicial function of determining to whom this money should be paid as between the state and the taxpayer, and the legislative function of appropriating the money for a certain purpose. Even were the circumstances such as to warrant the auditor to retain the money for his own protection against the claims of taxpayers, they would be just as urgent for him to retain it for his own protection against the claim of the state. The auditor had but one ministerial duty to perform after he received the money, namely, to pay it into the treasury. As was said in *Ames v. People,* 26 Colo. 83, "Public policy and public necessity require prompt and efficient action from such officers (ministerial officers), and when intrusted with the assessment of taxes and the collection and disbursement of revenue, they have no right to refuse to perform ministerial duties prescribed by law because of any apprehension on their part that others may be injuriously affected by it, or that the statute prescribing such duties may be unconstitutional." Courts cannot say that officers charged with the duty of receiving money for the state shall be reimbursed for any of that money which they lost or parted with in violation of their duty. Such a precedent would be fraught with the greatest danger to the state and its finances. All that the courts can say is that the $882.16 must be paid into the state treasury.

Section 3162, Rev. Stat., provides that creditors shall receive interest "on money due on account from the date when the same became due." The auditor kept an account of the moneys received by him for these taxes, and under the statute it was due within thirty days after he received it; that is the statute required him to pay it into the treasury within the thirty days. On each payment of taxes not paid over to the treasurer the state was entitled to interest from the expiration of thirty days after its receipt by the auditor. In *Board v. Clark,* 92 N. Y. 391, an action against a treasurer and his

surety for money collected and not paid over, it was held that the necessary and legitimate damages arising from the breach was the amount which the treasurer failed to pay over with interest from the day when the obligation to do so matured. In *Brunswick v. Snow*, 73 Me. 177, an action against a collector of taxes and his sureties, the latter defended on the ground that the warrant was defective, and it was so admitted. The court said that the defective warrant would excuse the collector from collecting, and would be a defense to an action for moneys not collected, and it was held that the sureties were liable for the money collected and interest on it after it became due. See also: *People v. Breyfogle*, 17 Calif. 504; *McPhillips et al. v. McGrath et al.*, 117 Ala. 549.

The judgment is, therefore, affirmed on appellant's assignments of error and reversed on appellee's assignment of cross-errors. The whole amount of taxes collected by Mr. Holmberg was $11,010.44. The cause is remanded with instructions to the district court to vacate its judgment against appellant and enter another against it for the whole amount collected as aforesaid, together with interest in accordance with the views herein expressed.

*Judgment affirmed on errors and Reversed on cross-errors. Cause Remanded with instructions.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE GABBERT not participating.