# JOHANSON v. GRAND LODGE A. O. U. W. OF UTAH, WYOMING and IDAHO.

### No. 1723.   Decided July 25, 1906   (86 Pac. 494).

1. INSURANCE — SUBORDINATE LODGE—FINANCIER — AGENT FOR INSURER.—The subordinate lodge of a mutual benefit society and its financier are agents of the Grand Lodge of the society, and not of the insured.

2. SAME — PAYMENTS — APPROPRIATION OF FUNDS.—Insured, while a member of defendant mutual benefit society, on becoming impecunious and in ill health, applied to it for relief and was notified by his subordinate lodge that it would make a loan to him for four months' assessments, or for January, February, March, and April, 1904; that such application would carry his dues and assessments for four months, or until May 1st, and that at the expiration of that time he would have to make a further application to the lodge; that he was in good standing on the books of the Grand Lodge. Held, that, the subordinate lodge then having money on hand applicable to the purpose, such loan constituted an appropriation of so much of the funds of the subordinate lodge as was necessary to pay such assessments.

3. SAME—AUTHORITY OF SUBORDINATE LODGE.—By the express provisions of the laws of a benefit society, the subordinate lodge was bound to see that the assessments were collected. It was expressly given power to suspend members for nonpayment of assessments and to reinstate them on payment of overdue assessments without notice to or direction from the Grand Lodge. Through the exercise of its powers of suspension, the subordinate lodge was authorized to annul the insurance of any member and to revalidate the same. It determined the good standing of its members which was requisite to the validity of their insurance, and was given other powers in respect to members which directly affected their rights in and to the contract of insurance. Held, that such subordinate lodge was not a mere collecting agent, but was authorized to waive a strict compliance of the society's by-laws relating to the payment of assessments.

4. SAME—WAIVER.—Where the subordinate lodge of a mutual benefit society, having power to waive strict compliance with the society's by-laws respecting payment of assessments, notified a member that the society would loan him the amount of four assessments for four specified months, after which he would have to pay his assessments

or again apply to the lodge for relief, it thereby waived payment of assessment by such member during such period, and was not entitled to enforce a forfeiture for the member's failure to pay such assessments during such period without notice to him.

Appeal from District Court, Weber County; J. A. Howell, Judge.

Action by Matilda Johanson against the Grand Lodge of the Ancient Order of United Workmen of Utah, Wyoming, and Idaho. From a judgment for plaintiff, defendant appeals.

AFFIRMED.

*John E. Bagley* and *W. L. Maginnis* for appellant.

*V. Gideon* and *T. D. Johnson* for respondent.

### APPELLANT'S POINTS.

It is well established by authority that the member of a beneficial mutual insurance association is presumed to know and is bound by the rules of the society. (*Home Forum v. Jones,* 50 Pac. 165; *Holland v. Taylor,* 12 N. E. 116; *Bower v. Sampson,* 1 N. E. 571; *Supreme Lodge v. Knight,* 20 N. E. 479; *Insurance Co. v. Foot,* 79 Ill. 361.)

The general doctrine is that an agent authorized solely to collect and demand or receive payments of a debt cannot bind his principal by any arrangement short of the actual collection and receipt of the money. (Mechem on Agency, sec. 375, and note; *Ritch v. Smith,* 82 N. Y. 627.)

Although an agent is authorized to receive payment in part he cannot on such payment or in consideration of it extend the time of payment on the balance. Nor can he extend the time without express authority in any case. (Mechem on Agency, sec. 378, and notes; *Lawrence v. Johnson,* 64 Ill. 351; *Powell v. Henry,* 11 So. 311; *Woodberry v. Larned,* 5 Minn. 339; *Hutchins v. Murger,* 41 N. Y. 155; *Brown v. Grand Council,* 81 Iowa 400, 46 N. W. 1086; *Borgraefe v.*

*Knights,* 22 Mo. App. 127; *Bolton v. Bolton,* 73 Me. 299; *Swett v. Society,* 78 Me. 541, 7 Atl. Rep. 394; *Baxter v. Insurance Co.,* 1 Allen 294; *Evans v. Insurance Co.,* 9 Allen 329; *Hale v. Insurance Co.,* 6 Gray 169; *Mulvey v. Insurance Co.,* 4 Allen 116; *Swett v. Society,* 78 Me. 541, 7 Atl. Rep. 394; *Burbank v. Association,* 144 Mass. 434, 11 N. E. 691; *McCoy v. Insurance Co.,* 11 N. E. 289.)

RESPONDENT'S POINTS.

There does not seem to be any, or at least but little conflict in the authorities but that an officer of the subordinate lodge charged with the duty of collecting assessments for the Grand Lodge, is the agent of the Grand Lodge and the Grand Lodge will be bound by his acts.

The following cases hold officers of the subordinate lodge to be agents of the Grand Lodge: *Murphy v. Independent Order,* 50 L. R. A. 111; *Bragaw v. Supreme Knights and Ladies of Honor,* 54 L. R. A. 602; *Schunck v. Gegensenbiger & C.,* 44 Wis. 375; *Whiteside v. Supreme Conclave I. O. of H.,* 82 Fed. Rep. 275; *Fraternal Aid Ass'n v. Powers,* 73 Pac. 65; *Ancient Order of the Pyramids v. Drake,* 72 Pac. 239; *Brown v. Supreme Court L. O. F.,* 68 N. E. 145; *McMahon v. Supreme Tent Knights,* 52 S. W. 384; *Andrew v. Modern Woodmen of America,* 76 S. W. 712; *High Court of Ind. Order v. Schnweister,* 49 N. T. 506; *Reed v. Ancient Order of the Red Cross,* 69 Pac. 127; *Supreme Lodge K. of H. v. Davis,* 58 Pac. 595. "When, in an action to recover upon a certificate of insurance issued by a mutual benefit society, the defense is forfeiture for nonpayment of an assessment, and the evidence shows that the assured has paid to the lodge sufficient funds to cover all legal assessments made against him, no forfeiture can be declared, even though the lodge may have made such an appropriation or application of the funds paid in as to ostensibly show that the assured was in arrears for the last assessment made prior to his death." (*Elliott v. Grand Lodge A. O. U. W.,* 42 Pac. 1009; *Supreme Tent K. of M. W. v. Valkert,* 57 N. E. 203; *Supreme Tribe of Ben Hur v. Hall,* 56 N. E. 780; *Logsdon v. Supreme*

*Lodge of F. U. of A.,* 76 Pac. 292; *Supreme Lodge of Pa-
triarchs of America v. Welsch,* 57 Pac. 115; *Foresters of
America v. Hollis,* 78 Pac. 160; *Supreme Tribe of Ben Hur
v. Hall,* 56 N. E. 780; *Supreme Council Catholic Knights of
America v. Winter's Admin.,* 55 S. W. 908; *Stylow v. Wis.
Odd Fellows M. L. Ins. Co.,* 2 Am. St. Rep. 738; *Home Pro-
tection v. Avery,* 7 Am. St. Rep. 54.)

STRAUP, J.

1.  This is an action brought by respondent against the ap-
pellant to recover on a certificate or policy of insurance. A
trial before a jury resulted in a verdict and a judgment in
favor of the respondent. In May, 1903, George E. Johanson,
husband of the respondent, became a member of Mullan Lodge
No. 22, A. O. U. W. located at Mullan, Idaho, a subordinate
lodge and under the jurisdiction of appellant, the Grand
Lodge of Utah, Idaho, and Wyoming. There was also a Su-
preme Lodge having jurisdiction over the Grand Lodges. Un-
der the laws of the order each workman degree member was
liable for all assessments for the beneficiary and the guaranty
funds. If a member failed or neglected to pay the assess-
ments to the financier of the subordinate lodge of which he
was a member on or before the 28th of the month in which
the assessments were made, he forfeited all rights of mem-
bership and stood suspended until reinstated. It was further
provided that, when an assessment had been made upon the
members by the Grand Recorder, it should be the duty of the
lodge to see that the assessment was duly collected from each
member who had received the workman degree; that the fi-
nancier (of the subordinate lodge) should keep a full, true,
and correct account between the lodge and each member, re-
ceive all moneys for the lodge, and pay the same to the re-
ceiver immediately, taking his receipt therefor. Provision
is also made that he shall notify all members of arrears, make
out a return of the finances to the lodge, a report of the semi-
annual tax due by the lodge to the Grand Lodge, furnish the
recorder with a list of all members and their standing in the
lodge and entitled to vote, and shall perform such other du-

ties as are required of him by the beneficiary rules. Johanson paid all assessments up to and including the 31st day of December, 1903, and it is conceded that he was a member in good standing on January 1, 1904. On account of sickness and inability to work, Johanson made application to the subordinate lodge for assistance and on January 5, 1904, the lodge, at a regular meeting, took action in the premises, whereby it made a loan to him for four months' assessments, or for January, February, March, and April all of which was made of record. On January 28 1904, the financier of Mullan Lodge wrote to Johanson, who was then in South Dakota, concerning the action of the lodge, in which he said: "The action taken on your case was to carry you for dues and assessments for four months, or until after the 1st of May. And at the expiration of that time you will have to make further application to this lodge. . . . You are held in good standing on the books and at the Grand Lodge also. This amount is simply loaned to you, for after you recover they expect you to pay." The lodge paid the dues and assessments for January and February. On March 15, 1904, without notice to or knowledge of Johanson, the lodge reconsidered its action taken on January 5th, and declined to pay his assessments for March and April, and a few days after March 28th, suspended him for nonpayment of the March assessment. Johanson was not notified of such action until by letter from the financier to him, on May 4, 1904, in which the financier informed him that he was suspended on March 28th, that it was necessary that he be re-examined and reinstated by a majority vote of the lodge, and that the money due the lodge would have to be paid before the case could be considered. On receipt of this letter Johanson declined to be bound by the action of the lodge suspending him, and being in failing health was not able to pass a medical examination for reinstatement, had he desired to do so. He remitted payments for all assessments for May, June, and July, which were all returned to him by the financier under the direction of the subordinate lodge. Johanson died July 28, 1904.

31 Utah—4.

The respondent testified that the deceased did not receive any communication or notice of any sort, from Mullan Lodge or the Grand Lodge, concerning the subsequent action of the subordinate lodge or his suspension, prior to the letter of May 4th. It is not claimed that any communication was sent to him prior thereto, except a letter written by the financier on April 22d;' but in that letter the deceased was not informed of his suspension, or the action taken by the lodge on March 15th. The respondent further testified that her husband relied upon the action taken by the lodge on January 5th, and the letter written to him by the financier, on January 28th, and because thereof relied upon the fact that it would not be necessary for him to make further payment to the lodge until after May 1st, and that, if the lodge had not taken such action, she and her husband would have borrowed money and would have paid the assessments.

2.    The principal point of contention made by the appellant is that the subordinate lodge and the financier were (1) the agents of the deceased, and (2) that, if they were not his agents, but were the agents of the Grand Lodge, they had no authority to enter into the arrangement that was made; that the subordinate lodge and the financier were authorized merely to collect the assessments as declared and to transmit them to the Grand Lodge, and that they were without authority to extend the time, or make 'any conditions, of payment; and that if the deceased failed to pay the assessments in cash, on or before the 28th of the month as required by the laws of the order, he did so at his peril.    These questions were presented' on objections to the introduction of evidence relating to the facts hereinbefore recited, and in requests to charge. The question as to whether the subordinate lodge and the financier were agents of the deceased, or agents of the Grand Lodge, is easily determined.    It has been generally held, in similar cases, that they were agents' of the Grand Lodge. (*Knights of Pythias v. Withers,* 177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762; *Murphy v. Independent Order of the Sons and Daughters of Jacob,* 77 Miss. 836, 27 South. 624, 50 L. R. A. 111; *Bragaw v. Supreme Lodge K. & L. of Hon-*

*or*, 128 N. C. 354, 38 S. E. 905, 54 L. R. A. 602; *Schunck v. Gegenseitiger, etc., Fond,* 44 Wis. 369; *Fraternal Aid Ass'n v. Powers,* 67 Kan. 420, 73 Pac. 65; *Brown v. Supreme Court I. O. F.,* 176 N. Y. 132, 68 N. E. 145; Niblack, Ben. Soc. [2d Ed.], pp. 516-542. 1 Bacon, Ben. Soc. [3d Ed.], sec. 148. Whether the subordinate lodge was without authority to do what was here done by it, and whether it bore a relation to the Grand Lodge of something more than a mere agent, or whether what it did, as to the Grand Lodge, amounted to a waiver of a strict compliance of the laws of the order with respect to paying assessments, is more difficult of solution. However, in one view taken by us of the case, it does not render it necessary to fully treat of the powers of the subordinate lodge with respect to the transaction, or to specially define its legal relation to the Grand Lodge. The authorities are to the effect that if the deceased had actually paid the assessments in money to the proper officers of the subordinate lodge, and that they, or the lodge controlling their action, failed or neglected to transmit it to the Grand Lodge, such failure or neglect would be chargeable to the Grand Lodge, and not to the deceased, on the principles of law that they were not his agents.

Counsel for appellant, in their brief, speak of and treat the action of the subordinate lodge of January 5th as a loan by it to the deceased, as did also the financier in his letter to the deceased. What is said in defense thereto is that the Grand Lodge is not bound by it. But, when it is conceded that the lodge loaned the deceased sufficient money to pay the assessments, it necessarily carries the implication of an appropriation of so much of its funds for such purpose, to the same extent as though it had actually counted out to him so much cash which was immediately returned by him to it in payment of the assessments. Undoubtedly the transaction was so intended and treated by the parties to it. To consider it otherwise is to construe the transaction not a loan, but something different from what all the parties said it was. When the subordinate lodge on January 5th loaned to the deceased sufficient money to pay the assessments, and it then had the

money on hand, which must necessarily be implied from the loan, it then had in its possession money received from the deceased in payment of the assessments the same as though he had otherwise paid it in cash; and the failure of the subordinate lodge to transmit it to the Grand Lodge cannot be chargeable to him. The fact that the subordinate lodge, on March 5th, reconsidered its action with respect to the loan, amounts to nothing. It either loaned the deceased, on January 5th, sufficient money to pay the assessments or it did not. Counsel for appellant say the record of the subordinate lodge and the correspondence between it and the deceased show that it did. If so, then that money belonged to the Grand Lodge, and ought to have been paid to it by the subordinate lodge. The failure to do so cannot be excused nor be charged to the deceased, because the subordinate lodge thereafter saw fit to attempt a repudiation of the loan in manner that it did, for such action amounted merely to a misappropriation of money not then belonging to it, but belonging to the Grand Lodge.

3. Furthermore,

"Forfeitures are not favored in the law, and courts, in order to avoid the odious results of a forfeiture, are not slow in seizing hold of such circumstances as may have been acted upon in good faith and which indicate an agreement on the part of the company or an election to waive strict compliance with the conditions and stipulations in the policy." (*Sweetser v. Odd Fellows' Mutual Aid Ass'n*, 117 Ind. 97, 19 N. E. 722.)

By reason of the action of the lodge on January 5th and of the letter from its financier to the deceased, he was induced to believe and to rely on the assurances made to him that he was not required to make any payments of assessments until after May 1st, and that until then he was in good standing in the subordinate and in the Grand Lodge. Having made such assurances, when the lodge thereafter and on March 15th, without notice to him, reconsidered its action, and on March 28th suspended him for nonpayment of the March assessment, with knowledge on its part that because of his failing health and continued disability he could not pass the required medical examination to enable him to be reinstated, and not

even notifying him of its action of reconsideration or of his suspension until May 4th, and after it had received from him one month's assessment, it acted in a manner which indicates a course of dealing not very commendable. The lodge well knowing that the deceased was relying on the arrangement made with it to keep alive his policy of insurance, if, for any reason, it found that it could not or ought not to carry it out, fairness required that it should have given him sufficient notice thereof, so that if he had chosen not to consider the assessments as paid, an opportunity would have been afforded him to pay them and prevent a forfeiture of his policy. While it may not have been so intended, yet, had the lodge undertaken to mislead him in order to bring about a suspension and a forfeiture of his policy, we see no course which tended more to accomplish such purpose than the one pursued by it.

Viewing the case from the standpoint that the payments were not made as required by the laws of the order, it is clear that the subordinate lodge waived such requirements. The pertinent inquiry then is, is the Grand Lodge bound by such a waiver? It is said that it is not binding on the Grand Lodge because the subordinate lodge was a mere agent authorized to collect and transmit the assessments; that the deceased was bound to know the laws of the order requiring him to pay the assessments to the financier on or before the 28th of the month, and that the subordinate lodge was without authority to waive or deviate from these provisions. But, as disclosed by the record, the subordinate lodge bore a relation to the Grand Lodge of something more than a mere collecting agency. By express provisions of the laws of the order the duty to see that the assessments were collected rested upon the subordinate lodge. It was expressly given the power to suspend its members for nonpayment of assessments, and thereafter to reinstate them on payment of deferred or overdue assessments, without notice to or direction from the Grand Lodge. Through the exercise of its powers of suspension, it was given the power to terminate and annul the policy of insurance held by the member and issued to him by the Grand

Lodge. Through the exercise of its powers in reinstating the member, it was given the power to rehabilitate the contract of insurance. It sat in judgment upon the good standing of the member, which good standing was a requisite to the validity of, and a liability on, the policy. In other particulars it was given the right to exercise powers and to perform offices with respect to its members, which directly affected their rights in and to the contract of insurance, and their contractual relation with the Grand Lodge as evidenced by the policy. The right to do these things and the power to exercise such functions, without notice to or direction from the Grand Lodge, constituted the subordinate lodge something more than a mere ministerial agent of the Grand Lodge. Under such circumstances the authorities support the doctrine that the subordinate lodge was clothed with authority to waive a strict compliance with the laws of the order relating to the payment of assessments, and when so waived by it, and acted upon by the member in good faith, the waiver is binding on the Grand Lodge.

In *Wallace v. Mystic Circle,* 121 Mich. 263, 80 N. W. 6, it was held:

"A mutual benefit society which lays upon the local lodges the duty of collecting assessments, giving them full power in respect thereto, including the right to reinstate members suspended for nonpayment, without notice to the supreme lodge of such reinstatement if made within ninety days after suspension, cannot defeat an action for death benefits by showing that a by-law of the society provided that assessments should be paid within twenty days after notice, or the member stand suspended from beneficial membership, and that the deceased had been in arrears in his last assessment for forty days prior to his death, where it appears that the lodge of which deceased was a member had induced its members to believe, through a long-continued practice of receiving assessments after due without declaring a forfeiture, that a delay of less than ninety days would not imperil their rights."

In *Grand Lodge A. O. U. W. v. Lachmann,* 199 Ill. 140, 64 N. E. 1022:

"In an action against a benefit society upon a benefit certificate, where the defendant denies liability upon the ground of the failure of the deceased to pay a certain assessment on the 28th day of February,

at which time, under the constitution, he would be regarded as suspended and his rights forfeited, a notice from the subordinate lodge of which the deceased was a member that his assessment must be paid by March 25th is admissible, as ·tending to show a waiver of the provision for immediate forfeiture."

In that case it was further observed:

· "The notice of the 15th of March certainly had a tendency to induce in the mind of Benjamin Lachmann the belief that he would remain a member of the order, in good standing, until the 25th of March, and that he would not stand suspended until after that time. It is said he knew, and was bound to know, that he was suspended, from the constitution and by-laws of the order which entered into and were a part of his contract with the lodge, from and after February 28th, for a failure to pay the assessments due on that day. It is true that, by the letter of the contract, that was the effect of the non-payment of the assessments on that day, but he also knew that that requirement could be waived, and also that by the terms of the same contract the suspension would be removed if he paid within thirty days. The giving of that notice, as well as the habit of the lodge, would lead any reasonable mind to the conclusion that within thirty days forfeiture for nonpayment of assessment would not be insisted upon. That Lachmann did so understand is shown by the fact that he placed the notice with the amount of money it called for, in his desk, and expressed the intention of paying it the next night, but suddenly died on the 24th. It is said by counsel for appellant the question is not what the deceased believed or had a·right to believe from the notice, but was he by the notice prevented· from acting or influenced to act, in any manner different from that in which he would have acted had he not received the notice? We think the evidence fairly tended to show that he was induced to delay the payment of money to the financier by the statement in the notice that he had until March 25th, at 8 o'clock p. m., to make it, and, in effect, that he would only stand suspended after that time."

In the case of *McCorkle v. Ins. Association,* 71 Tex. 149, 8 S. W. 516,

"An act or promise of an officer superintending the business of a mutual benefit association, although beyond his power as defined in the by-laws of the association, if acted upon by a member, will bind the company."

In *Supreme Lodge K. of H. v. Davis,* 26 Colo. 252, 58 Pac. 595,

"In a mutual benevolent order composed of a supreme lodge and subordinate lodges, an officer of a subordinate lodge charged with the duty of notifying the members of assessments made by the supreme lodge

for the purpose of paying insurance certificates of deceased members, and of collecting and forwarding to the supreme lodge such assessments, is an agent of the supreme lodge, notwithstanding a rule or by-law of the order recites that such officer in collecting and forwarding assessments shall be the agent of the members of the subordinate lodge, and the supreme lodge is charged with all knowledge possessed by the agent in making the collection."

In the case of *Van Houten v. Pine*, 38 N. J. Eq. 72, a director of the society called upon a sick member who was insured in the society. The sick member said to him that an assessment was due on the following Friday, that he could send out and borrow the money to pay it but that he expected some money on the following Monday and didn't like to borrow it. He asked the director to pay the assessment for him promising to repay him on the following Monday. The director assured him that he would pay it for him at once, but neglected to do so and the society claimed that his rights were' forfeited. The court held that the promise of the director was one upon which the member had a right to rely and that the member should be reinstated. In line with the foregoing authorities are also the following: *Whitesides v. Supreme Conclave* (C. C.), 82 Fed. 275; *Alexander v. Grand Lodge A. O. U. W.*, 119 Iowa 519, 93 N. W. 508; *Coverdale v. Royal Arcanum*, 193 Ill. 91, 61 N. E. 915; *Loughridge v. Iowa L. & E. Ass'n*, 84 Iowa 141, 50 N. W. 568; *Moore v. Order of Ry. Conductors*, 90 Iowa 721, 57 N. W. 623; *Whitney v. Nat. Masonic Accident Ass'n*, 57 Minn, 472, 59 N. W. 943; *National Mutual Ben. Ass'n v. Jones*, 84 Ky. 110; *Courtney v. St. Louis Police Relief Ass'n*, 101 Mo. App. 261, 73 S. W. 878; 2 Bacon, Ben. Soc. (3 Ed.), sec. 434a.

The judgment of the court below is affirmed, with costs.

BARTCH, C. J., and McCARTY, J., concur.