## MORAN v. KNIGHTS OF COLUMBUS.

No. 2733.   Decided July 12, 1915.   (151 Pac. 353.)

1. INSURANCE—ACTION ON CERTIFICATE—PLEADINGS—PARTIES. In an action to recover on a benefit certificate, where plaintiff alleged that after its issuance she had become the wife of insured and, by virtue of defendant's by-laws, the beneficiary in such certificate, and that insured had thereafter died while the certificate was in effect, and wherein defendant denied any knowledge concerning the matrimonial relations of plaintiff and insured, and alleged that insured was not a member in good standing at his death because of failure to pay his assessments, the question whether plaintiff was the real party in interest was not properly raised. (Page 408.)

2. INSURANCE—ACTION ON CERTIFICATE—REPLY—STATUTE. Under Comp. Laws 1907 Section 2980, as amended by Laws 1907, c. 39, providing that a party who confesses the facts pleaded in an answer, but desires to avoid the legal effect thereof, must file a reply, plaintiff, suing as the widow of an insured to recover upon his benefit certificate, and alleging that insured had died

a member in good standing while the certificate was in effect, upon defendant's answer, alleging a by-law that no benefit should be paid to the beneficiary of any member whose death was caused by his own act unless the one claiming the benefits should affirmatively show that prior to such suicide insured had been judicially declared insane, was under treatment for insanity, or was in the delirium of other illness when the act was committed, was not required to reply, in order to make her evidence respecting insured's mental condition at and immediately before his death admissible. (Page 408.)

3. APPEAL AND ERROR—HARMLESS ERROR—PLEADINGS. In such case, where it was clear that, even though a reply should have been filed, the omission to do so had in no way prejudiced defendant, a judgment for plaintiff would not be reversed for failure to file a reply. (Page 408.)

4. INSURANCE—PROOFS OF DEATH—WAIVER. An insurer who unconditionally denies all liability on a policy sued on waives a condition in the policy requiring proofs of death.[1] (Page 409.)

5. INSURANCE—ACTION ON BENEFIT CERTIFICATE—EVIDENCE. In an action by plaintiff as the widow of an insured to recover on his benefit certificate, a document purporting to be proofs of death, submitted to the insurer on behalf of insured's father by the local council, and with which plaintiff was in no way connected, was properly excluded. (Page 409.)

6. INSURANCE—ACTION ON CERTIFICATE—QUESTION FOR JURY—MENTAL CONDITION OF INSURED. In such action, where the evidence upon the issues of insured's suicide and his mental condition at the time was not such as allowed but one conclusion, but was such that reasonable men might arrive at different conclusions, the issues were properly submitted to the jury. (Page 410.)

7. INSURANCE—FORFEITURE—NONPAYMENT OF PREMIUMS—ENFORCEMENT. Under the constitution and by-laws of a fraternal benefit association, providing that any member should *ipso facto* forfeit his membership by failing to pay his regular monthly assessments within thirty days from the first day of the month in which they were levied, that no money should be paid from the treasury of any council, except upon a two-thirds vote at a regular meeting following written notice of a resolution or intention to pay, that a council might authorize the payment of a member's assessment as a loan or gift from its general fund, not to exceed six assessments, payable to the financial secretary within the time fixed for such payment, that every by-law of a council authorizing payment of a member's assessment should

[1]*Daniher v. Grand Lodge*, 10 Utah, 123, 37 Pac. 245; *West v. Insurance Society*, 10 Utah, 442, 37 Pac. 685.

be approved by the board of directors, and that a subordinate council might make necessary by-laws not to conflict with the constitution and regulations made by the national council, the association, as to a member who was an officer of a local council at a monthly salary of about $10, whose assessment account sometimes remained uncredited on the books of the local council, during which time the local council had paid his assessments from its funds within the time given by the by-laws, who was never reported delinquent and was always recognized as a member in good standing, and who for five years prior to his death paid all assessments regularly and who, at his death had paid all assessments, could not enforce the provision of strict forfeiture for default in the payment of assessments. (Page 410.)

8. INSURANCE—CONSTRUCTION AGAINST FORFEITURE. Equity and good conscience abhor forfeitures, and the courts will construe transactions so as to avoid a forfeiture where such construction is permissible, which rule applies to insurance contracts as well as to others, and it is immaterial whether the transaction is one in equity or at law, since Comp. Laws 1907, Section 2489, provides that, whenever there is any variance between the rules of equity and those of common law in reference to the same matter, the rules of equity shall prevail.[2] (Page 410.)

9. INSURANCE—FORFEITURE—WAIVER. Where a forfeiture is insisted upon by an insurer, it is bound to inform itself respecting its rights in that regard within at least some reasonable time or be deemed, as a matter of common justice, to have waived its rights to a forfeiture. (Page 410.)

10. PRINCIPAL AND AGENT—ACTS OF AGENT—REPUDIATION OR RATIFICATION. A principal must at some point of time ascertain whether the business acts of his agent are authorized, and, in case there is neither fraud, concealment, nor misrepresentation, and the rights of third persons are involved, must assert his right to repudiate unauthorized acts within a reasonable time or remain silent. (Page 418.)

Appeal from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by Mary Moran against the Knights of Columbus.

Judgment for plaintiff. Defendant appeals.

[2]*Johanson* v. *Grand Lodge*, 31 Utah 45, 86 Pac. 494.

AFFIRMED.

*Geo. J. Gibson* for appellant.

*A. G. Horn* for respondent.

## APPELLANT'S POINTS.

A member of a fraternal benefit society is bound by subsequently enacted by-laws or alterations in those previously existing, but such by-laws or alterations will be given a prospective operation unless it clearly appears that they were intended to operate retrospectively. (*Maynard* v. *Locotive Engineers' Mut. L. etc. Ins. Assoc.,* 14 Utah 458, 47 Pac. 1030; *Roberts* v. *Cohen,* 70 N. Y. Supp. 57; affirmed, 173 N. Y. 580, 65 N. E. 1122; *Emmons* v. *Supreme Conclave I. O. H.,* 63 Atl. 871; *Berlin* v. *Eureka Lodge,* 132 Cal. 294, 64 Pac. 254; *Wist* v. *Grand Lodge A. O. U. W.,* 22 Oreg. 271, 29 Pac. 610; *Caldwell* v. *Grand Lodge,* 148 Cal. 195, 82 Pac. 781, 2 L. R. A. N. S. 653.)

Where a written contract refers to an instrument specially identified as a part of the contract, the instrument is admissible in evidence whether it tends to make the whole contract ambiguous or not, and to exclude the instrument is in ordinary cases prejudicial error. (*United Iron Works* v. *Outer Harbor Dock and Wharf Co.,* 141 Pac. 917; *Ins. Co.* v. *Sailer,* 67 Pa. St. 108.)

The burden of proof is on the plaintiff to show that the insured was insane at the time of the act which caused his death; this being true where insanity is pleaded to offset suicide, the more true is it where, as in this case, the by-law making delirium of other illness an offset to suicide expressly states that the same must be affirmatively proved; a reply therefore should have been filed. (*Hopkins* v. *N. W. Life Ass. Co.,* 94 Fed. 729; *Dickerson* v. *N. W. Mut. L. Ins. Co.,* 200 Ill. 270, 65 N. E. 694; *Hart* v. *Fraternal Alliance,* 108 Wis. 490, 84 N. W. 857.) Proofs of death are admissible as admissions by the beneficiary; the effect thereof is to make a *prima facie* case of the truth of the facts stated therein.

(*Beard* v. *Royal Neighbors of America,* 99 Pac. 83, 53 (Oregon) 102; *Ins.* v. *Newton,* 22 Wall. 32, 22 L. Ed. 793; *Grand Lodge* v. *Wieting,* 168 Ill. 408, 48 N. E. 59; *Hart* v. *Fraternal Alliance,* 108 Wis. 490, 84 N. W. 857; *Voelkel* v. *Supreme Tent K. M. W.,* 116 Wis. 202, 92 N. W. 1104; Jones Commentaries [Blue Book of Evidence], Section 270.)   A denial of liability in order to be a waiver of proofs of death must have occurred during the time within which the beneficiaries were required to act, so that they might reasonably infer that the insurer did not intend to rely upon failure to furnish proper proofs.   (*Hart* v. *Fraternal Alliance,* 108 Wis. 490, 84 N. W. 857; *Westchester Fire Ins. Co.* v. *Coverdale,* 58 Pac. 1029 [Kansas]).

The receipt by the supreme body of a fraternal benefit society of money from a local lodge to pay the assessments of a member *ipso facto* suspended when the same is an advancement by the lodge does not estop it from contesting liability on his certificate because of his non-payment of assessments. (*Coughlin* v. *Knights of Columbus,* 79 Conn. 218, 64 Atl. 223.)   This is a construction of the same by-laws involved in this case by the Supreme Court of the state of the incorporation of the defendant and is immeasurably stronger as against the plaintiff than is this case.   To the same effect: *Knights of Columbus* v. *Burroughs,* 107 Va. 671, 60 S. E. 40, 17 L. R. A. (N. S.) 246; *Modern Woodmen* v. *Tevis,* 54 C. C. A. 293, 117 Fed. 369; *Lyon* v. *Supreme Assembly,* 153 Mass. 83.

The constitution and laws of the society may provide that no subordinate body, nor any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members.   (Laws of Utah, 1911, Chapter 148, Section 20; *McCoy* v. *R. C. Mut. Ins. Co.,* 152 Mass. 272; *Kocher* v. *Supreme Council Cath. Ben. Legion,* 65 N. J. Law 649; *Loeffler* v. *Mod. Woodmen of Am.,* 100 Wis. 79.)   The last case is a discussion of waiver where the insured himself occupied the office corresponding to that of financial secretary in the defendant society.

The member is presumed to know limitation of agent's authority. (*Northern Assurance Co. v. Grand View Building Association*, 183 U. S. 308.) That the charter, constitution, laws and application of membership together with the benefit certificate constitute the contract of insurance in a fraternal benefit society really needs no citation of authorities. (Laws of Utah, 1911, Chapter 148, Section 8; *Sterling* v. *Head Camp*, 28 Utah 505, 80 Pac. 375; Same case, 28 Utah 526, 80 Pac. 1110.)

## RESPONDENT'S POINTS.

To avoid a policy on the ground of suicide, it must be shown that the suicide was the voluntary act of a sane man. In other words, intentional and voluntary self-destruction is meant and not death from accident or unexpected causes. (*Insurance Co.* v. *Haselett*, 105 Ind. 212, 4 N. E. 582; *Ins. Co.* v. *Graves*, 69 Ky. 268; *Pierce* v. *Ins. Co.*, 34 Wis. 389; *Phillips* v. *Ins. Co.*, 26 La. Ann. 404; *Fowler* v. *Ins. Co.*, 4 Lans. 202; *Edwards* v. *Ins. Co.*, 20 Fed. 661; *Keels* v. *Life Ass'n.*, 29 Fed. 198; *Ins. Co.* v. *Naugle*, 130 Ind. 79, 29 N. E. 393; *Penfold* v. *Ins. Co.*, 85 N. Y. 317; *Ins. Co.* v. *Payne*, 105 Fed. 172; *Co.* v. *Crayton*, 70 N. E. 1066 [Ill.]; *Ins. Co.* v. *Brignac*, 36 So. 595; *Ins. Co.* v. *Nicklas*, 41 Atl. 906; *Burnham* v. *Company*, 75 N. W. 445 [Mich.]; *Brown* v. *Ins. Co.*, 57 S. W. 415 [Tenn.]).

The pleadings show that the defendant denied all liability on the policy sued on and the plaintiff was not required to show any compliance with any of the conditions subsequent to the death of the deceased. This has been before this court on numerous occasions and on all occasions this court has held that where the defendant denies all liability proofs of loss are not necessary and are dispensed with, and that the defendant cannot complain that the same was not proven. (*Daniher* v. *Lodge*, 10 Utah 110; *West* v. *Ins. Co.*, 10 Utah 442; *Stephens* v. *Ins. Co.*, 16 Utah 22.)

FRICK, J.

This action was commenced by the plaintiff as the widow of one William J. Moran, deceased, late of Ogden, Utah, to

recover upon a life insurance policy or so-called benefit certificate issued by the defendant, whereby it insured the life of the deceased for the sum of $1,000. It is not necessary to set forth the allegations of the complaint in detail. It is sufficient to state that the plaintiff, in substance, alleged that the defendant is a corporation, and that in September, 1904, it duly executed and delivered to the deceased, a single man, a certain policy of insurance, hereinafter called a benefit certificate, whereby it agreed that in case of the death of the deceased it would pay to his father said sum of $1,000; that thereafter the plaintiff and the deceased intermarried and became husband and wife; that by virtue of said marriage, and as such wife, under and by virtue of the by-laws of the defendant which were pleaded, she became the beneficiary in said benefit certificate and was entitled to the $1,000 named therein; that the insured died on the 22d day of June, 1913, and at the time of his death was a member in good standing of the defendant corporation, and said benefit certificate was in full force and effect; that said defendant was notified of the death of said deceased, and it refused to pay said insurance money "and has absolutely denied liability" under said benefit certificate; that if an unmarried member married after he became such member, such marriage constituted the wife his beneficiary without further designation by him; that the plaintiff had fully complied with all the provisions of the constitution, by-laws and rules and regulations of the defendant and all the conditions on her part to be performed.

The defendant in its answer admitted its corporate existence, but denied any knowledge concerning the death of the deceased, and also denied any knowledge "concerning the matrimonial relations" of plaintiff and the deceased. The defendant also admitted the existence of the by-laws pleaded by the plaintiff relating to the effect of her marriage with the deceased. The defendant then, with much particularity, set forth that it is a fraternal and benevolent association with certain laws, rules and regulations which govern and are imposed upon members, large portions of which are pleaded. It then affirmatively alleged as follows:

"That between the times in said complaint mentioned,

to wit: between the making of the contract aforesaid and the alleged death of said William J. Moran, the said Moran did on divers occasions fail, neglect and refuse to pay his said regular monthly assessments within thirty days from the first day of the month in which said assessments were respectively levied, and that the said William J. Moran was not a member of the defendant society at the time of his death as alleged, by reason of his failure to comply with the laws requiring payment of insurance assessments, and that said Moran had *ipso facto* forfeited his membership by non-payment of such assessments, in accordance with the laws of the defendant society, and had not been reinstated; that the cause of the death of said William J. Moran was suicide; and that under the laws of the defendant society his beneficiary is not entitled to receive the death benefit by reason of the cause and nature of the death of said Moran, said death being caused by his own act."

The defendant also admitted that it had denied liability under the benefit certificate, and denied all the allegations of the complaint "not specifically admitted."

When the case was called for trial, the defendant also offered to return to the plaintiff "any and all insurance assessments * * * from and after the time that said William J. Moran did *ipso facto* forfeit his membership in said order by reason of his failure" to pay his assessments.

Upon substantially the foregoing issues, the parties proceeded to trial. The plaintiff produced, and, over the objections of the defendant, was permitted to introduce in evidence, the benefit certificate in question. Plaintiff proved that she and the deceased were married; that he died on the 22d day of June, 1913; and that at that time they were husband and wife. She also produced and introduced in evidence a receipt signed by the financial secretary of the local council of which the deceased was a member, dated June 16, 1913, whereby it was acknowledged that the deceased had paid his dues and assessments up to the 1st day of that month, which kept him in good standing during the whole of that month, and that the defendant had received notice of the death of the deceased, and that it had unconditionally rejected plaintiff's claim and

denied all liability under said benefit certificate. It was also shown by the testimony of the financial secretary that the deceased, at the time of his death, was a member in good standing so far as the payment of current dues and assessments was concerned.

After having submitted the foregoing evidence, the plaintiff rested. The defendant then moved for a nonsuit for the reason that the plaintiff had failed to prove that she had submitted proofs of death. Plaintiff's counsel contested the motion upon the ground that in denying unconditionally liability under the benefit certificate the defendant had forfeited or waived its right to insist upon proofs of death. The court so ruled and denied the motion.

The defendant then produced in evidence certain portions of the constitution and by-laws of the defendant. The parts introduced in evidence are quite voluminous, and we shall only insert those parts here which we deem material to an understanding of this decision. They are as follows:

"Any member of this order shall *ipso facto* forfeit his membership in the order: Who fails, neglects or refuses to pay his proportionate part of any assessment for thirty days from the date of mailing or transmitting the notice of assessment by the secretary of his council, or of the regular monthly assessment, within thirty days from the first day of the month in which levied. * * * No money shall be paid or transferred from the treasury of any council (except such moneys as the council is called upon to regularly pay for its current expenses and as provided by the laws of the order, or for purposes approved by the national council or board of directors) unless by a two-thirds vote of the members present and voting at a regular meeting held subsequent to a regular meeting at which notice in writing of a resolution or intention to pay or transfer such money and the purposes and amount to be paid or transferred shall have been given and regularly read. * * * A council may authorize the payment of a member's assessment as a loan or gift, from its general fund, to a member not to exceed six assessments, but such payment must be made to the financial secretary before the time fixed for such payment to avoid suspension under the law. Every

by-law or standing resolution of any council authorizing the payment of a member's assessment as a loan or gift from its general fund, as herein provided, shall be submitted in duplicate to, and approved by the board of directors before it shall become operative. * * * If the financial secretary shall omit to pay, within the prescribed time, an assessment for a member, in compliance with such resolution or by-law, the member stands suspended at the expiration of the time for payment. * * * A subordinate council may make and promulgate for its own government such by-laws, rules and regulations as it may find necessary for the proper conduct of its affairs, provided that no by-laws, rules or regulations shall be enacted which shall conflict with, or be in opposition to, or in any way impair the enforcement of the constitution, rules and regulations made or enacted, or which may be made and enacted by the national council, or directors of the Order of the Knights of Columbus. * * * No benefit shall be paid to the beneficiary * * * of any deceased member * * * if such deceased person was prior to the time of his death *ipso facto* or otherwise suspended or expelled by the laws of the order and not reinstated according to the laws of the order; or if the death of such member has been caused by his own act, unless the person or persons claiming by certificate or membership shall establish and prove affirmatively that prior to such suicide the member had been judicially declared insane, or was under treatment for insanity at the time the act was committed, or was then in the delirium of other illness.''

The defendant also produced other evidence tending to show that the deceased had committed suicide by taking carbolic acid. It also submitted evidence to the effect that after the deceased was accepted as a member he had forfeited said membership by failing or neglecting to pay his assessments as required by the constitution and laws of the defendant. In that connection, the books of the local council of which the deceased was a member and an officer, to wit: secretary, were produced, and from the entries therein it appeared that the deceased's account during the years 1905, 1906 and 1907 frequently remained unbalanced for several months at a

time. That is, it appeared that the defendant was each month regularly charged or debited with his assessment and dues, but that the account was not credited monthly with payments, but only at intervals of two or more months and at intervals running as high as four or five months at a time up to the 1st day of January, 1908, when the account was credited with payment in full; and after that time, it seems, the deceased paid his assessments and dues regularly within the time required by the constitution and laws of the defendant. It was, however, also made to appear, from said books and otherwise, that during the time that the deceased was delinquent he was the secretary of the local council, and as such was receiving a salary of approximately ten dollars per month; that his assessments to the national council were always paid from the funds of the local council within the time required by the laws of the defendant; and that he never was reported to the national council or otherwise as having forfeited his membership, but was always treated and recognized by all as a member in good standing up to the time of his death. No evidence with respect to his delinquency was produced except what was made to appear from the entries in the books. The last which were introduced in evidence were made more than five years before the death of the deceased. Nor was there any independent evidence produced that he in fact was indebted to the local or national council in any sum or to any extent whatever except as shown by the books, and according to the entries therein he was in arrears for local dues and assessments to the national council as before stated.

The plaintiff contested the claim of suicide, and, over defendant's objections, was permitted to show, both on cross-examination of its witnesses and by her own witnesses on rebuttal, what the mental condition of the deceased was immediately before and at the time it is claimed he took the carbolic acid.

The defendant's counsel contend that the evidence is conclusive that the deceased took the carbolic acid with suicidal intent, while plaintiff's counsel contends that the inferences to be deduced from all the evidence point as strongly to an accidental as they do to an intentional taking of the poison,

and that the jury must have so found the fact, and, further, that although it were found that the deceased intended to take the poison, yet the evidence is to the effect that his act of taking it "was committed" when he was "in the delirium of other illness." Counsel for plaintiff therefore contends that, although the deceased died from the poison, yet that fact does not prevent her from recovering upon the benefit certificate.

The court submitted to the jury the question of whether the deceased had committed suicide, and the further question that, if they found that he had committed suicide, whether his act in doing so fell within the exception we have quoted from the laws of the defendant. The court took from the jury the question of whether the deceased had forfeited his membership for non-payment of dues and assessments, and ruled as a matter of law that under the undisputed evidence the deceased was a member in good standing at the time of his death. The only questions that were submitted to the jury were whether the deceased committed intentional suicide, and, if he did, whether his act was excused under the laws of the defendant. The jury found the issues in favor of the plaintiff, and the court entered judgment accordingly, from which the defendant appeals.

Numerous errors are assigned; but counsel, in their brief, have reduced them to a number of propositions which we shall now proceed to consider.

It is first contended that the plaintiff was not the real party in interest, and hence the court erred in permitting her to recover. There is no merit to this contention. Under the pleadings as they stood, the question of real party in interest, if it ever was a question under our Code, was not properly raised.

It is next contended that the court erred in admitting plaintiff's evidence respecting the deceased's mental condition at and immediately before his death for the reason that no issue was presented in that regard by the pleadings. It is contended that plaintiff's evidence upon that question was, in its nature, a confession of the defense of suicide pleaded in the answer and an attempted avoidance

thereof, in that the plaintiff undertook to prove that the deceased was not responsible for his acts. It is true that under our Code (Comp. Laws 1907, section 2980, as amended by Laws of Utah 1907, p. 38), a party who confesses the facts pleaded in an answer, but desires to avoid the legal effect thereof, must file a reply. While plaintiff's evidence in rebuttal apparently partook of the nature of an avoidance, yet that such was the case is more apparent than real. She did not confess that the deceased had committed suicide. What she really attempted was to negative and explain defendant's evidence upon that subject. In view of the whole pleadings, and in view of how the matter arose at the trial, we do not think a reply was necessary in this case. Moreover, it is as clear as it well can be made that, even though a reply should have been filed, yet the omission to do so in no way prejudiced the defendant. The judgment therefore cannot be reversed upon that ground.

It is also insisted that the court erred in submitting the case to the jury at all for the reason that the plaintiff failed to prove that she had submitted proofs of death. It is the settled law of this jurisdiction that, where the insurer unconditionally denies all liability under the policy sued on, he waives the condition in the policy requiring proofs of death. *Daniher* v. *Grand Lodge,* 10 Utah, page 123, 37 Pac. 245, and cases there cited; *West* v. *Insurance Society,* 10 Utah 442, 37 Pac. 685.

It is also contended that the court erred in excluding a certain document purporting to be proof of death which was submitted to the defendant on behalf of the father of the deceased by the local council. The plaintiff was in no way connected with that document, and hence could not have been bound by anything it contained or that was omitted therefrom. The court therefore did not err in rejecting the proposed evidence.

It is next urged that the court erred in its charge to the jury upon the question of burden of proof respecting the question of suicide and plaintiff's mental condition. The court not only complied with the settled law in that regard, but it strictly followed defendant's by-laws upon that subject.

In that connection it is also insisted that the court erred in submitting the questions of suicide and the mental condition of the deceased to the jury. It is contended that the court should have ruled as a matter of law that the deceased committed suicide and that the plaintiff could not recover for that reason. While the evidence upon those issues is not as satisfactory as it might be, and is such that if we were sitting as jurors we might, perhaps, have arrived at a different conclusion than did the jury, yet the evidence was sufficient to require a submission of those questions to the jury. The evidence is not such as permits of but one conclusion, but it is such that reasonable men might arrive at different conclusions, and hence was required to be submitted to the jury. In view that we are all agreed that under the evidence the case should have been submitted to the jury, we shall not set forth the evidence or even state the substance thereof. Under such circumstances, we must assume the responsibility of determining the question of the sufficiency of the evidence, and it could subserve no good purpose to set it out at length. The court committed no error either in submitting those questions to the jury or in charging them as already stated.

Finally, it is vigorously contended that the court erred in not ruling as a matter of law that the deceased had not complied with the laws of the defendant, in that he failed to pay his dues and assessments within the time required by said laws and for that reason had forfeited his membership. This is really the only serious question in this case. If it were not for two decisions, namely, *Coughlin* v. *Knights of Columbus*, 79 Conn. 218, 64 Atl. 223, and *Knights of Columbus* v. *Burroughs*, 107 Va. 671, 60 S. E. 40, 17 L. R. A. [N. S.] 246, which cases, it is insisted by defendant's counsel, are decisive of the last question, we would have little, if any, difficulty in disposing of the case upon what we consider well-settled legal principles. It must be conceded that in the first case cited, in which the lower court sustained a motion for judgment for the defendant upon the pleadings and which was upheld upon appeal, it was held that the payment of a member's assessment by a local council by a mere

vote of the members of such council was illegal and did not
prevent the *ipso facto* forfeiture of his membership, and hence
when he was not during his lifetime reinstated as provided
by the laws of the order his beneficiary, in case of his death,
could not recover upon the benefit certificate issued by the
defendant.   The decision in the Virginia case, which was de-
cided after the Connecticut case, is to the same effect.   The
facts in those cases were, however, materially different from
those in the case at bar.   Nor did the court in those cases, for
reasons not disclosed, consider or pass upon, at least not
directly, the by-laws of the national council authorizing the
payment of members' assessments by local councils, nor the
right of the local council to regulate its own affairs within
certain limits.   In the Virginia case the deceased had neglected
to pay his assessments for five months immediately preceding
his death, although frequently requested to do so by the
secretary of the local council.   The deceased had, however,
never refused to pay them, and the local council, by a vote
of the members, had timely and regularly forwarded the
assessments to the national council so that the national body,
who finally pays the money for death benefits, received every
dollar that was coming to it, and the amount due from the
deceased was also paid to the local council about four days
before his death, so that the deceased was likewise not indebted
to it at the time of his death, although the money was paid
to and received by it at a time and under circumstances when
the deceased could not have been reinstated under the laws
of the order in force at the time.   The Connecticut case in its
legal aspect does not materially differ from the Virginia
case.   Counsel for defendant therefore contend that the legal
effect of those decisions is that, in case a member fails or
neglects to pay an assessment within the time required by the
laws of the order, such failure *ipso facto* forfeits his member-
ship, and the mere fact that the assessment is paid to the
national council out of the treasury of the local council by a
vote of the members thereof does not prevent a forfeiture of
membership, and that unless such member is thereafter rein-
stated in accordance with the laws of the order his member-
ship remains lapsed, and in case of death his beneficiary can-

not recover. In view of the two decisions we have referred
to, there seems much force to counsel's contention. In order
to determine whether the case at bar should be ruled by those
decisions or not, let us consider the undisputed facts developed
in the case at bar in the light of the defendant's laws as we
have heretofore set them forth.

One of the undisputed facts is that the deceased, at the time
when the books of the local council show that he failed to pay
his assessments promptly, was earning a salary which was pay-
able out of the local treasury. Now we have seen that the
local, or so-called subordinate council, had the right to pro-
mulgate by-laws, rules and regulations "for its own govern-
ment" and "for the proper conduct of its affairs," so long
as such laws, rules and regulations in no way conflicted with
or impaired the laws of the national council or the enforcement
thereof, which, of course, was paramount. While it is made
reasonably clear that the national council by its laws under-
took to control the subordinate or local council in applying
its general fund for the payment of the assessments of its
members, yet we can see nothing in the laws of the national
council whereby the local council was prohibited from apply-
ing any money in its general fund to the payment of the
assessment of a member or officer in case the council was
indebted to such member or officer for salary or otherwise,
if such a course was mutually agreeable. All we really have,
therefore, is that, as a matter of bookkeeping, it is made to
appear that while the deceased was earning a small monthly
salary his assessment account at times remained unbalanced
for some time, and that during all of which time the local
council forwarded his assessments regularly and timely to the
national council. While it is true that the general fund in
the local treasury was guarded, if not entirely controlled, by
the laws of the national council, yet, in so far as that fund was
to be used in payment or discharge of some obligation or debt
owing by the local council, it could pay or discharge the same
in the manner its members saw fit, regardless of the laws
of the national council, so long as the acts of the local council
did not conflict with the laws of the national council. At least,
so far as shown, there is nothing in the laws of the national

council to the contrary. Moreover, under the local council's right to govern itself and to conduct its own affairs within the limits already stated, we can see no reason why it could not, out of its general fund, discharge any debt or obligation due to any member or officer, whether for salary or otherwise, by paying dues and assessments and charging him with the amount paid on his account with the local council. The only reason that is urged why the national council by its laws guards the general fund of the local councils is that there are two classes of members, one class which joins merely for social purposes, while the other class joins for both social and insurance purposes. The local general fund, it is contended, belongs to both classes, and hence, if that fund is paid for insurance purposes for one class of members contrary to the express provision of law, then the other class is prejudiced because the funds in which it has an interest are applied without authority of law and against its interests. But, as we have pointed out, the deceased was the secretary of the local council, and therefore served both classes alike and was entitled to pay proportionately from the funds belonging to both classes alike; and, if a part of the local council's general fund was thus applied in payment of the dues and assessments of the deceased while such council was indebted to him, the money was still devoted to a legal and proper purpose and not contrary to the laws of the national council, provided the local council received full credit for the money thus expended, and there is no claim that it did not. Indeed, it is undisputed that both the local and national councils received from the deceased every cent due from him in excess of his salary, and that during the last five and one-half years immediately preceding his death there is no claim that he was in arrears even as a matter of bookkeeping at any time or for any amount. The mere fact that the books of the local council may not contain a detailed recital of the foregoing transactions, and that they merely disclose that the deceased was debited with his monthly dues and assessments, and that he was not regularly or each month credited with payments on his account, in no way affects the legal status of the transaction; nor does it prove that the deceased or the local council

had transcended the law of the national council in what was in all probability done. We say in all probability because after the 1st day of January, 1908, or during the five and one-half years immediately preceding the death of the deceased, and during which time, it seems, he no longer continued to be secretary, he never was in arrears. The law always regards substance and not form in all matters of this character. Moreover, all transactions, under circumstances like those in this case, will be construed so as to avoid a forfeiture if such a construction is permissible under the evidence.

The foregoing are strong circumstances from which it may legitimately be inferred that while the deceased was secretary some arrangement either tacit or otherwise, existed between him and the local council with regard to the payment and crediting of his dues and assessments as indicated. Nor does the fact that the laws of the national council authorized the local council to pay a member's assessments as a "loan or gift from its general fund not to exceed six months," and that the general law further provided "every by-law or standing resolution of any council authorizing the payment of a member's assessment as a loan or gift from its general fund as herein provided shall be submitted in duplicate to and approved by the board of directors before it shall become operative," affect the foregoing conclusions. Indeed, when all the laws are considered together, the foregoing conclusions are strengthened rather than weakened. In this connection the laws also provide that, although the payment of assessments be duly authorized, yet, if they are not timely remitted to the national council, the member whose assessment is authorized to be paid out of the general fund will "stand suspended." It is thus manifest that what the national council insists upon is prompt payment of the assessments, and that the condition it imposes on local councils to guard their general funds are precautionary merely.

But it is contended by counsel for defendant that, inasmuch as it was not shown by plaintiff that a by-law or resolution was adopted and approved as required by the national council, therefore the payment, although authorized and made by the local council, was nevertheless void, and the deceased's mem-

bership was forfeited. If such a contention were made on behalf of an ordinary insurance company after it had received payment of at least sixty-five monthly assessments after the alleged breach or forfeiture occurred and when it was clearly shown that it had always timely received every cent due to it from the insured, or from some one else in his behalf, no court would long hesitate in determining the result. Where, however, as here, the interests of a benevolent society composed of a large membership are involved, some courts, if we can judge from their decisions, seem to be inclined to hold that a forfeiture may be enforced not only for a failure to pay a current assessment, but that such may be done for a transaction, however remote, and where the member subsequently complied in full measure with all the conditions imposed except in not making a payment long in the past within the precise time required by the laws of the society. Indeed, it is contended that the Connecticut and Virginia cases are to the effect that the national council may go back any number of years and show that the member had failed to pay an assessment within the time required by its laws, and thus defeat the right of his beneficiary to recover, although the national council for years thereafter had received his assessments and had always treated him as a member in good standing. This, it is contended, can be done so long as it is not made to appear that the national council is for some reason estopped from claiming and enforcing the forfeiture. We cannot subscribe to such a doctrine. While we do not question the right of the national council to insist upon a compliance, yes, even with a strict compliance of its laws, rules and regulations, yet we do not concede that either under legal or equitable principles, it may at any time, however remote from the act, still enforce a forfeiture. It is no answer to say that its officers did not know of the breach of the member. Where forfeitures are insisted upon by individuals or associations, they are bound to inform themselves respecting their rights in that regard within at least some reasonable time, or be deemed, as a matter of common justice, to have waived the right to a forfeiture.

The contention is, however, made that in this case the deceased's membership was *ipso facto* forfeited. But what sig-

nificance is to be given to that? Will any lawyer seriously
insist that one for whose benefit the right to insist upon a
forfeiture is given by contract may not be deemed to have·
waived such right? Does it make any difference whether the
right is to be exercised by an individual or an association?
Will it further be contended that such individual or associa-
tion may continue to receive the fruits of such a contract and,
notwithstanding that, may insist upon the forfeiture provided
for therein regardless of how long a time has elapsed between
the time the act giving rise to the forfeiture has occurred and
the time the forfeiture is insisted upon? We refrain from
answering the questions, since the answer in each instance is
self-evident. Upon the question of whether a benevolent asso-
ciation may not through laches or by lapse of time be deemed
to have waived a forfeiture, see note to *Royal Guardians* v.
*Clarke*, Ann. Cas. 1914, C. 437, and *Trotter* v. *Grand Lodge*,
11 Ann. Cas. 539. Can it successfully be contended therefore
that because a member of an association (whose membership
may have extended over a period of twenty or thirty years)
in his first or second year, or in any one of the early years of
his membership, failed to pay an assessment promptly within
the time it was required to be paid, his beneficiary on his
death can be met with the claim that no recovery can be had
because of a failure to pay the assessment aforesaid, notwith-
standing the fact that, during all of those years after the first
lapse, the member promptly paid and the association received
all dues and assessments and treated him in all respects as a
member in good standing? Add to the foregoing, also, that
the association made no claim that the assured could not and
would not have been promptly reinstated if the forfeiture of
his membership had been insisted upon within a reasonable
time, and that to insist upon the forfeiture, as was done in
this case, would have left the deceased helpless and now
leaves the beneficiary in like condition. Equity and good con-
science always have abhorred forfeitures and courts are loth to
enforce them unless compelled to do so. The rule applies to
insurance cases as well as to others. This court is firmly com-
mitted to that doctrine. *Johanson* v. *Grand Lodge*, 31 Utah

45, 86 Pac. 494, and cases there cited. Moreover, our statute (Comp. Laws 1907, section 2489) provides:

"Wherever there is any variance between the rules of equity and the rules of common law, in reference to the same matter, the rules of equity shall prevail."

It matters not therefore, in this jurisdiction, whether the action is one in equity or one at law; the rules of equity respecting forfeitures must prevail. It seems to us that both the laws of the national council as well as the undisputed facts bring this case squarely within the principles we have just discussed. If a forfeiture can be enforced in this case, we can see no reason why it should not be enforced in every case where a member omitted to pay an assessment promptly within the time fixed by the laws of the order, although he made timely arrangement with his local council to pay the same and it was in fact timely paid to the national council. We think that, under the undisputed facts, the District Court did not err in ruling that the claim of forfeiture was stale and not enforceable. If, however, the transaction here in question be viewed in the light of the familiar principles which pertain to the relationship of principal and agent, then again the result must be the same. If it be assumed that in paying the assessment in question the local council was the agent of the deceased, then it in fact did no more than pay the amount of the assessment for him to the national council, and in view that it did so timely we cannot see how the national council can complain, although it in no way was bound by the act of the local council. If, upon the other hand, it is assumed that the local council was the agent of the national council, and in what was done the local council transcended its authority and thus did not bind its principal, how can the national council complain? The national council certainly received all that it was entitled to, and received it within the time fixed by its own laws.

Must not a principal at some point of time ascertain whether the business acts of his agent were authorized, and in case there is neither fraud, concealment nor misrepresentation, and the rights of third persons are involved, must not such prin-

cipal assert his right to repudiate unauthorized acts within a reasonable time or remain silent with respect thereto? Would a court of justice for a single moment listen to the principal who invoked its aid to enforce a forfeiture which he claimed was based upon a prior unauthorized act of his agent which had taken place more than five years previous and which act was fair and free from all fraud, misrepresentation and concealment and entered into in good faith by all concerned, and where such principal has received all that he was entitled to just as though the act complained of had been authorized? Of course, the claim here is that the principles just discussed do not apply because it was the duty of the deceased as well as of the local council to obey and abide by the laws of the national council. Grant that. It was, however, also the duty of the national council to act within a reasonable time or thereafter hold its peace. If the contention made in this case shall prevail, we know of no limit of time within which any forfeiture which is based upon the failure to strictly comply with some governing by-law, rule or regulation may not be enforced. A rule which would effectuate such forfeiture is so far-reaching that the ordinary mind cannot grasp all the results that might flow therefrom. Courts may not apply one principle to one kind of insurance or action, and another to another kind of insurance or action. In all kinds of insurance contracts, non-payment of premiums, assessments, or dues, call them what you will, involve forfeitures. The law which limits the enforcement of forfeitures where all have acted in good faith, within the narrowest limits has been well, and as we think, correctly, established by the courts. Forfeitures for long-past acts or omissions, which leave the insured and the benficiary alike helpless, are just as odious if exacted by a benevolent society as if sought to be enforced by the most grasping corporation. In no case should forfeitures be enforced by the courts except where the contract of the parties, the law applicable thereto, and justice permit no other course. We desire to add that we do not hold that a forfeiture may not be insisted upon in any case after this association has received assessments from a

member, but what we hold is that, under the facts and circum-. stances of this case, a forfeiture may not be enforced.

For the reasons stated, the judgment is affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.